Ronald E. EGAN, Plaintiff,

v.

ATHOL MEMORIAL HOSPITAL,
et al., Defendants.

Civil Action No. 94–40158–NMG.

United States District Court,
D. Massachusetts.

March 28, 1997.

 

Michael C. Wilcox, Louis P. Aloise, Shumway, Giguere, Byrne, Fox & Aloise, Worcester, MA, for Ronald E. Egan.

Francis D. Dibble, Jr., Jerome M. Scully, Kelly A. McCarthy, Bulkley, Richardson & Gelinas, Springfield, MA, for Athol Memorial Hosp.

Francis D. Dibble, Jr., Jerome M. Scully, Bulkley, Richardson & Gelinas, Springfield, MA, for ·William J. Difrederico, Osama Al-Masri, Jose M. Amparo, Robert G. Knight, Myron Maron, C. Joseph Mathew, Corazon Maramag, Shameen Mennon, John Skrzypczak, Cyrus Vakili.

Francis D. Dibble, Jr., Jerome M. Scully, Kelly A. McCarthy, Bulkley, Richardson & Gelinas, Springfield, MA, Gerard R. Laurence, Milton, Laurence & Dixon, Worcester, MA, for Yong-Min Chi.

## MEMORANDUM AND ORDER

GORTON, District Judge.

The plaintiff, Ronald E. Egan, M.D. ("Egan") has sued Athol Memorial Hospital ("Athol"), its president and ten doctors due to their participation in a medical peer review process which in 1994 resulted in termination of Egan's medical staff membership and privileges at Athol. Plaintiff seeks damages and injunctive relief under Sections 1 and 2 of the Sherman Antitrust Act, Sections 4 and 5 of the Massachusetts Antitrust Act and Sections 2 and 11 of the Massachusetts Consumer Protection Act. In addition, plaintiff seeks damages for bad faith and unreasonableness. The defendants have filed a Joint Motion for Summary Judgment which is opposed by plaintiff.

### I. *Facts*

The following relevant facts are 1) agreed upon by the parties, 2) not specifically contradicted by the plaintiff, or 3)assumed from letters, minutes of meetings and depositions submitted in support of and opposition to the motion. The facts are viewed in the light most favorable to the plaintiff. See *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993).

## A. *Background*

In November of 1981, Egan applied for appointment to the attending medical staff of the hospital and requested surgical privileges. On March 2, 1982, Egan was appointed to the active medical staff of Athol, and his request for surgical privileges was approved later that month.

On July 28, 1986, the first recorded Incident Report was issued against Egan. Later that year, a letter was sent to Dr. Charles Pierson, a member of the Executive Committee, from the members of Athol's Maximum Care Unit Committee in which they noted three Maximum Care Unit ("MCU") cases which were viewed as having been inadequately managed by Egan. The MCU Committee issued a recommendation and suggested that Egan be invited to discuss the three cases and the recommendation with the MCU Committee or the Executive Committee. As a consequence, Athol's Ad Hoc Committee on Professional Conduct met with Egan on February 13, 1987. Egan agreed with the recommendations of the MCU Committee that 1) he be required to consult an appropriate internal medicine specialist or sub-specialist for each of his admissions to the MCU whether they be medical or surgical in nature, 2) his future admissions were to be monitored, and 3) if he did not follow the Committee's recommendations, further action could be taken.

On February 4, 1988, Mr. DiFederico, President of Athol, submitted a report to the Massachusetts Board of Registration in Medicine informing it that, based upon a review by Athol's Tissue Committee, Egan was required to be supervised by a senior surgeon for his next ten dilation and curettage procedures, and that Egan was required to have medical and surgical consults on all of his MCU admissions.

In December, 1988, three nurses wrote letters about a contemporaneous incident in which Egan had been called in to assist with a patient. The nurses alleged that Egan was acting inappropriately and suspected that he was intoxicated. He was informed in writing of the complaint, denied that he was intoxicated and complained that the unprofessional way in which the surgical call had been executed influenced his behavior on the evening in question.

From October to December, 1989, Egan was often cited for incomplete and late medical charts. During the same period, Athol's Utilization Review Committee conducted a study of Egan's discharge plans and concluded that those plans accounted for up to 50% of Athol's total readmissions.

In 1990 and thereafter, defendants continued to receive complaints from nurses, staff and other physicians about Egan's clinical competence and professional behavior. The defendants conducted an investigation into each of the complaints, and several cases were identified as being of particular concern with regard to the appropriateness of care rendered by Egan. He was asked to respond, both orally and in writing, to the peer review committees' concerns, which he did on numerous occasions. In the meantime, his application for reappointment dated September 21, 1991 was taken under consideration.

At about the same time, Egan filed complaints about alleged substandard treatment provided by several Athol physicians. For instance, in November, 1991, Egan wrote two variance reports complaining of one doctor's performance and one variance report complaining of a second doctor's performance. In April of that year, he made written complaints against two other doctors.

## B. *Six of Egan's Cases Scrutinized*

In November 1992, after reviewing additional information provided by Egan, the Executive Committee of the Medical Staff retained an independent medical reviewer to review six of Egan's cases. The reviewer concluded that four of the cases indicated significant inadequacies in Egan's medical care.

Plaintiff retained his own experts to evaluate and render opinions on the quality of the care he provided. Several expert reports were written before the disputed disciplinary action was taken by Athol, and additional letters were submitted after litigation ensued. Those letters addressed some of the cases that later served as the basis for the disputed disciplinary action ("course require-

ments") as well as other cases, and the opinions rendered therein ranged from finding that Egan was somewhat at fault to declaring that he was not incompetent.

Patient # 1 was one of the six patients who was of particular concern to the MCU Committee, and one of the four patients whose care by Egan had been found to be inadequate by the independent medical reviewer. Egan contended in an affidavit, however, that a fellow physician was either wrong or purposefully misstated facts about the care of patient # 1 and that the same physician, who blamed an alleged delay in diagnosis on Egan, was really at fault himself for failing to respond.

### C. The Professional Review Resulting in the Disciplinary Action at Issue

The decision that Egan's reappointment to the medical staff at Athol would be conditioned upon his taking additional required courses within six months was arrived at between June and October, 1993 through a series of meetings, written communications and phone conversations between the defendants and Egan or his former attorney. Specifically, the Medical Staff Executive Committee (the "Committee") addressed the matter at three separate meetings, the last being a general meeting of the staff in September, 1993. Minutes of meetings of both the Committee and the staff show that the decision on Egan was unanimously approved. During the September, 1993 staff meeting, a written recommendation was distributed indicating that a review had been made of the opinions of Egan's experts. Egan declined the opportunity to provide additional information.

After the Committee first recommended that Egan be required to complete course requirements, Egan made it clear that he would refuse to fulfill those requirements and requested both that he be afforded a hearing and that the Committee comply with the Medical Staff By-laws in any decision it made. After the September meeting, which was held in accordance with those By-laws, a letter was sent by certified mail to Egan informing him that he was entitled to a hearing before an ad hoc committee if he so requested within 14 days. Egan did not, however, open that letter until after the 14 days had elapsed. In October, 1993, Egan spoke to and corresponded with DiFederico and requested a hearing regarding his cases which had been examined during the preceding several years. The request was denied in a letter in which DiFederico informed Egan that he had waived his right to a hearing.

On December 14, 1993 the Hospital nevertheless reappointed Egan to the active medical staff of Athol for one year, conditioned upon his completion of selected courses within six months. In addition, all of Egan's cases were to be reviewed. Egan refused to take the required courses and his staff membership and clinical privileges were terminated automatically on June 15, 1994, after which he commenced this lawsuit.

### II. Standard of Review

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir.1991), cert. denied, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir.1990)). The burden is upon the moving party to show, based upon the pleadings, discovery on file, and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in his favor. O'Connor v. Steeves, 994 F.2d at 907.

If the moving party demonstrates that there is "an absence of evidence to support the non-moving party's case," the burden shifts to the non-moving party to establish the existence of a genuine issue of material fact. FDIC v. Municipality of Ponce, 904 F.2d 740, 742 (1st Cir.1990) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986)). The nonmovant, however, may not rest upon

mere allegation or denial of the pleadings, Fed.R.Civ.P. 56(e).

This Court will first address the question of whether the defendants are entitled to immunity under the Health Care Quality Improvement Act of 1986, 42 U.S.C. § 11101–11152 ("HCQIA"), and then analyze each of plaintiff's five counts.

### III. *Defendants' Claim of Immunity*

#### A. *Immunity Under HCQIA*

HCQIA provides incentive and protection for physicians who participate in effective professional peer review. 42 U.S.C. § 11101(5). The statute "grants immunity to professional review bodies, and those who assist such bodies, in connection with professional review action, provided that the requirements of section 11112(a) are met." *Sklaroff v. Allegheny Health Education Research Foundation*, 1996 WL 383137, at *6 (E.D.Pa. July 8, 1996). The requirements for immunity for professional review actions are satisfied if the professional review action is taken:

(1) in the reasonable belief that the action was in the furtherance of quality health care,

(2) after a reasonable effort to obtain the facts of the matter,

(3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and

(4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3).

42 U.S.C. § 11112(a). These requirements, as they relate to the case at hand, are discussed below.

Courts utilize an objective standard of reasonableness when considering whether a defendant has met the statutory requirements. *Sklaroff* at *6 (citing *Mathews v. Lancaster Gen. Hosp.*, 87 F.3d 624, 635 (3rd Cir.1996)) ("*Mathews II* "). It is important to note that "a defendant's subjective bad faith or hostility is irrelevant." *Id.* Whether defendants are entitled to immunity under the HCQIA is a "question of law for the court to decide whenever the record is sufficiently developed." *Sklaroff* at *6 (citing *Bryan v. James E. Holmes Regional Medical Ctr.*, 33 F.3d 1318, 1332 (11th Cir.1994), *cert. denied*, 514 U.S. 1019, 115 S.Ct. 1363, 131 L.Ed.2d 220 (1995)).

HCQIA states that there is a presumption that a professional review action has met the statutory requirements unless the presumption is rebutted by a preponderance of the evidence. 42 U.S.C. § 11112(a). The burden is therefore on the plaintiff to prove that the defendants failed to meet those requirements. *Benjamin v. Aroostook Medical Center*, 937 F.Supp. 957, 973 (D.Me. 1996) (citing *Bryan*, 33 F.3d at 1333). In reviewing summary judgment orders under HCQIA, the Court must determine whether the plaintiff has "satisfied his burden of producing evidence that would allow a reasonable jury to conclude that the Hospital's peer review disciplinary process failed to meet the standards of the [Act]." *Mathews II* at 633 (quoting *Bryan*, 33 F.3d at 1334).

#### 1. *Reasonable Belief That The Action Was In The Furtherance Of Quality Health Care*

Section 11112(a)(1) is satisfied if "the reviewers, with the information available to them at the time of the professional review action, would reasonably have concluded that their action would restrict incompetent behavior or would protect patients." *Sklaroff* at *7 (quoting H.R.Rep. No. 903, at 10). In its evaluation, a court should utilize an objective standard which focuses on the totality of the circumstances. *Mathews II*, 87 F.3d at 635 (quoting *Imperial v. Suburban Hosp. Ass'n, Inc.*, 37 F.3d 1026, 1030 (4th Cir. 1994)).

Even considered in a light most favorable to the plaintiff, a review of Egan's performance while on the medical staff at Athol and of the disciplinary actions taken against him along the way indicate that the defendants had the requisite "reasonable belief" to support their action. Plaintiff has presented no evidence that the professional

review action taken by Athol was motivated by anything other than a reasonable belief that it would further quality health care. *See Mathews II*, 87 F.3d at 635. The opinions of Egan's experts are to no avail because even if Egan could show that defendants reached an incorrect conclusion on a particular medical issue, "that does not meet the burden of contradicting the existence: of a *reasonable belief* that they were furthering health care quality in participating in the peer review process." *Imperial*, 37 F.3d at 1030. This Court concludes, therefore, that defendants had a reasonable belief that the action they took was in the furtherance of quality health care.

## 2. *Reasonable Effort To Obtain The Facts*

■ Under HCQIA, 42 U.S.C. § 11112(a)(2), a professional review action must be taken after a reasonable effort to obtain the facts of the matter. It is important to note that "nothing in the Act requires that a physician be permitted to participate in the review of his care." *Sklaroff* at *8. Also, "[p]laintiff is entitled to a reasonable investigation under the Act, not a perfect investigation." *Id.* at *8 (citing 42 U.S.C. § 11112(a)(2)).

■ Although plaintiff alleges that defendants' peer review process was a sham, the evidence is insufficient to rebut the presumption that defendants complied with the standard of fact gathering set forth in 42 U.S.C. § 11112(a)(2). Defendants' efforts in this case, shown through correspondence between Egan, Athol and Mr. DiFederico, and the minutes from various committee meetings, are similar to those of the defendants in *Fobbs v. Holy Cross Health System Corp.*, 789 F.Supp. 1054 (E.D.Cal.1992), *aff'd* 29 F.3d 1439 (9th Cir.1994), *cert. denied*, 513 U.S. 1127, 115 S.Ct. 936, 130 L.Ed.2d 881 (1995). In *Fobbs*, prior to imposition of sanction, the plaintiff was given an opportunity to discuss cases, and, after monitoring began, defendants continued to gather facts, conducted additional internal investigation of the plaintiff's cases and asked an outside reviewer to evaluate the cases. *Fobbs*, 789 F.Supp. at 1066–67. The *Fobbs* Court found that

defendants made a reasonable effort to obtain the facts of the matter. *Id.* at 1066.

Again, considering the facts in the light most favorable to the plaintiff, he has fallen short in his effort to rebut the presumption that defendants made a reasonable effort to obtain the facts. Defendants' consideration, review and discussion of their concerns about plaintiff's performance satisfied the reasonable effort standard.

## 3. *Adequacy of Notice And Hearing Procedures*

■ A professional review action must be taken "after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances." 42 U.S.C. § 11112(a)(3). Safe harbor procedures are set forth in 42 U.S.C. § 11112(b) which, if followed, will satisfy the notice and hearing requirements of the statute. *Mathews v. Lancaster General Hosp.*, 883 F.Supp. 1016, 1033 (E.D.Pa.1995) *aff'd* 87 F.3d 624 (3rd Cir.1996) ("*Mathews I* "). However, the safe harbor provisions also provide that "[a] professional review body's failure to meet the conditions described in this subsection shall not, in itself, constitute failure to meet the standards of subsection (a)(3) of this section." 42 U.S.C. § 11112(b) It is important to note that "[t]he ultimate inquiry is whether the notice and hearing procedures were adequate." *Mathews I*, 883 F.Supp. at 1033–34 (quoting *Smith v. Ricks*, 31 F.3d 1478, 1486 (9th Cir.1994), *cert. denied*, 514 U.S. 1035, 115 S.Ct. 1400, 131 L.Ed.2d 287 (1995)).

■ Although Egan correctly points out that he was not afforded thirty days within which to request a hearing as specified in 42 U.S.C. § 11112(b)(1)(B)(ii), the controlling question is whether he has shown, by a preponderance of the evidence, that the defendants did not provide him with fair and adequate process. *Islami v. Covenant Medical Center Inc.*, 822 F.Supp. 1361, 1377 (N.D.Iowa 1992). A plaintiff may not "strip a defendant of the protections of the Act merely by failing to complete the entire scope of review procedures available to him." *Mathews I*, 883 F.Supp. at 1034. Egan failed

to request a hearing within fourteen days as was offered by defendants. Furthermore, the statute clearly states that failure to meet its conditions of notice does not, in itself, constitute failure to meet the statutory standard. 42 U.S.C. § 11112(b). Based upon the affidavits, letters and depositions submitted, the relevant law and arguments of counsel, this Court determines that the notice and hearing procedures were adequate.

### 4. *Reasonable Belief That The Action Was Warranted By The Facts Known*

■ A professional review action must be taken "in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3)." 42 U.S.C. § 11112(a)(4). In making such an evaluation, the Court must not reweigh the evidence or substitute its own judgment for that of the peer review committee. *Sklaroff* at *9 (citing *Bryan*, 33 F.3d at 1337). The appropriate inquiry is "whether the decision was reasonable in light of the facts known at the time the decision was made, not in light of facts later discovered." *Sklaroff* at *9.

■ Had the review committee consciously joined with members of the hospital staff to manufacture or exaggerate incidents or had anyone been economically motivated to conspire to restrain plaintiff's practice, defendants would be unreasonable to believe their conduct constituted a legitimate peer review. *See Boczar v. Manatee Hospitals & Health Systems, Inc.*, 993 F.2d 1514, 1518 (11th Cir.1993). However, even indulging all reasonable inferences in plaintiff's favor, Egan has produced no evidence, beyond mere allegation, to show that anyone at Athol exaggerated or manufactured complaints or had a clear economic motive to deny privileges to him. Nor has he produced evidence sufficient to demonstrate a genuine issue of material fact regarding the reasonableness of defendants' belief that the professional review action was warranted.

Plaintiff's expert reports do not suffice because it has been found that

[w]hile ... conflicting expert reports raise an issue of fact as to the adequacy of care provided by [the plaintiff], they do not rebut the presumption that the Board made its decision in the reasonable belief that it was warranted by the facts known.

*Mathews II*, 87 F.3d at 638. In the instant case, as in *Mathews*, the reports that defendants relied upon were not so obviously mistaken or inadequate as to render reliance on them unreasonable.

### 5. *Conclusion*

■ This Court has determined that the professional review action was taken 1) in the furtherance of quality health care, 2) after a reasonable effort to obtain the facts, 3) after adequate notice and hearing procedures, and 4) in the reasonable belief that the action was warranted by the facts known. It therefore concludes that, as a matter of law, defendants are immune and thus not liable in damages for participating in the peer review process and ultimately for terminating plaintiff's staff privileges.

### B. *State Law Immunity*

The issue of state law immunity, granted pursuant to M.G.L.c. 111, § 203(c), need not be addressed because it has already been determined that immunity is granted under HCQIA. Because defendants' professional review action satisfies all of the requirements of 42 U.S.C. § 11112(a), they "shall not be liable in damages under any law of the United States or of any State ... with respect to the action." 42 U.S.C. § 11111(a).

### IV. *Defendants' Motion for Summary Judgment Regardless of Immunity*

Although HCQIA grants defendants immunity from all monetary damages in this case, it does not grant immunity from the injunctive relief plaintiff claims. Nevertheless, viewing the record in a light most hospitable to Egan, the defendants have demonstrated an absence of evidence to support Egan's claims and Egan has failed to establish the existence of genuine issues of material fact with respect to such claims. This Court will, therefore, grant summary judg-

ment to the defendants on each of plaintiff's claims discussed *seriatim.*

## A. *Plaintiff's Antitrust Claims*

■ Plaintiff's complaint seeks damages and injunctive relief through Sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1 & 2, Sections 4 and 5 of the Massachusetts Antitrust Act, M.G.L. c. 93, and Sections 2 and 11 of the Massachusetts Consumer Protection Act, M.G.L. c. 93A. This Court works from the premise that antitrust laws protect "competition, not competitors," *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 488, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977) and that "[i]t is only when the market is being distorted by anticompetitive conduct that the antitrust laws should be invoked." *Seagood Trading Corp. v. Jerrico, Inc.,* 924 F.2d 1555, 1573 (11th Cir.1991).

### 1. *Count I—Conspiracy In Restraint Of Trade*

■ In order to prove a violation of Section 1 of the Sherman Act, a plaintiff must establish the existence of an agreement in the form of a contract, combination or conspiracy among at least two legally distinct persons or entities that imposes an unreasonable restraint on trade. *Oksanen v. Page Memorial Hosp.,* 945 F.2d 696, 702 (4th Cir. 1991), *cert. denied,* 502 U.S. 1074, 112 S.Ct. 973, 117 L.Ed.2d 137 (1992) (citing *White & White, Inc. v. American Hosp. Supply Corp.,* 723 F.2d 495, 504 (6th Cir.1983)). Before the elements of a claim under Section 1 are even addressed, however, the plaintiff must show that the alleged agreement would affect interstate commerce. *Oksanen,* 945 F.2d at 702, n. 1 (citing *Summit Health, Ltd. v. Pinhas,* 500 U.S. 322, 111 S.Ct. 1842, 114 L.Ed.2d 366 (1991)). In the instant case, Egan argues that much of his practice concerned Medicare and Medicaid patients and therefore had a significant impact upon interstate commerce. He next focuses on his attempt to prove the existence of a conspiracy.

The defendants point out that in *Mathews,* where a hospital board had ultimate decision making authority

[s]imply making a peer review recommendation does not prove the existence of a conspiracy [among the hospital and its staff]; there must be something more such as a conscious commitment by the medical staff to coerce the hospital into accepting its recommendation.

*Mathews II,* 87 F.3d at 639 (quoting *Oksanen,* 945 F.2d at 706). Defendants contend that there is no evidence of such a conscious commitment in the case at bar and, therefore, there was no conspiracy.

Egan argues that there is a capacity to conspire here which should preclude summary judgment on this narrow issue. He states that it has been recognized that

a medical staff can be comprised of physicians with independent ... competing economic interests [and that] when these actors join together to take action among themselves, they are unlike a single entity and therefore they have the capacity to conspire as a matter of law.

*Oksanen,* 945 F.2d at 706. The plaintiff, however, fails to acknowledge, as defendants do, that *Oksanen* further explained that "there must be something more such as a conscious commitment by the medical staff to coerce the hospital into accepting its recommendation." *Id.* Egan merely alleges that because he had submitted complaints against several Athol physicians, the defendants agreed amongst themselves and others to adopt and impose arbitrary conditions upon plaintiff's reappointment to Athol's staff so as to exclude him from practicing at Athol.

This Court has determined that the Board voted to restrict the plaintiff's privileges for valid health care reasons. As in *Mathews,* Egan has produced no evidence that tends to exclude the possibility that the Board acted independently, and this Court, therefore, declines to infer an antitrust conspiracy. *See Mathews II,* 87 F.3d at 640–41.

### 2. *Count II—Monopolization*

■ Plaintiff claims that defendants violated Section 2 of the Sherman Act by participating in the offenses of monopolization and conspiracy to monopolize. There are two factors which must be satisfied in order to establish the offense of monopolization:

(1) the possession of monopoly power in the relevant market, and

(2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.

*Oksanen,* 945 F.2d at 710 (quoting *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,* 472 U.S. 585, 596, n. 19, 105 S.Ct. 2847, 2854 n. 19, 86 L.Ed.2d 467 (1985)).

Egan has offered little to no evidence to support a definition of the relevant market, so the existence of monopoly power cannot be demonstrated. *See Oksanen,* 945 F.2d at 710. Even if such power could be demonstrated, Egan has not offered any evidence to prove that a fact finder could find no valid business reason or concern for efficiency in Athol's revocation of his privileges. *See id.* Thus, just as there is no evidence of conspiracy by the hospital and medical staff relevant to Section 1, there is no evidence of conspiracy under Section 2. *Id.* The Court determines, therefore, that there is no genuine issue of material fact with respect to plaintiff's Section 2 claim.

### 3. *The Massachusetts Antitrust Act Component of Counts I and II*

The Massachusetts Antitrust Act provides that it "shall be construed in harmony with judicial interpretations of comparable federal antitrust statutes insofar as practicable." M.G.L. c. 93, § 1. Because this Court has determined that the plaintiff has failed to satisfy the requirements of Sections 1 and 2 of the Sherman Act, the state law antitrust claims, therefore, likewise fail. *See Oksanen,* 945 F.2d at 710. Summary judgment will be entered in favor of the defendants on Counts I and II.

### B. *Plaintiff's Other State Law Claims*

#### 1. *Count III–Tortious Interference*

■ In order to prove a claim of tortious interference with an advantageous relationship, a plaintiff must prove

(1) a business relationship or contemplated contract of economic benefit,

(2) the defendant's knowledge of such relationship,

(3) the defendant's intentional and malicious interference with it, and

(4) the plaintiff's loss of advantage directly resulting from the defendant's conduct.

*Comey v. Hill,* 387 Mass. 11, 19, 438 N.E.2d 811 (1982) (quoting J.R. Nolan, Tort Law § 72, at 87 (1979)); *c.f. United Truck Leasing Corp. v. Geltman,* 406 Mass. 811, 816, 551 N.E.2d 20 (1990) (adopting the word "improperly" in place of "maliciously," but agreeing that more than intentional interference is required).

■ Egan alleges that defendants engaged in a deliberate and willful conspiracy to remove his privileges. He asserts that defendants misstated medical records, ignored undeniable medical evidence, claimed violations of sound medical practice without medical support and did not fairly or justly do their jobs. He claims that such actions caused him to lose numerous patients and thereby intentionally interfered with his patient relationships of which defendants were aware.

Defendants argue that plaintiff's claim in Count III fails because not only were defendants' actions neither improper nor malicious (factor # 3) but their actions were required under both federal arid state law. Furthermore, they maintain that their actions could not have directly caused plaintiff's loss of any advantageous relationship with his patients because the termination of his privileges occurred only after he refused to attend limited continuing education courses. Finally, in order to recover for tortious interference with advantageous relationships, defendants assert that Egan must also prove that defendants' actions were unrelated to any legitimate interest of the hospital (*Boothby v. Texon, Inc.,* 414 Mass. 468, 487, 608 N.E.2d 1028 (1993)), and that plaintiff has offered no evidence in support of such a claim.

This Court discerns no evidence of malicious or improper interference with any of Egan's business relationships by the defendants. It determines that plaintiff has not met his burden of showing a genuine issue of material fact, at least as to this element of his claim, and summary judgment will, there-

fore, be granted in favor of defendants with respect to Count III.

## 2. *Count IV—Consumer Protection Act (M.G.L. c. 93A)*

A plaintiff in a Chapter 93A claim must demonstrate that "the defendant's actions fell within at least the penumbra of some common-law, statutory, or other established concept of unfairness, or were immoral, unethical, oppressive or unscrupulous." *Damon v. Sun Co., Inc.*, 87 F.3d 1467, 1484 (1st Cir. 1996) (quoting *Quaker State Oil Refining Corp. v. Garrity Oil Co.*, 884 F.2d 1510, 1513 (1st Cir.1989)). In *Quaker State*, the First Circuit Court of Appeals held that "[t]he objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble world of commerce." 884 F.2d at 1513 (quoting *Levings v. Forbes & Wallace, Inc.*, 8 Mass.App.Ct. 498, 396 N.E.2d 149 (1979)).

Plaintiff makes no unique arguments related to his Chapter 93A claim and this Court determines that he has offered no evidence sufficient to show defendants committed unfair or deceptive acts warranting recovery under M.G.L. c. 93A. Summary judgment will, therefore, be granted to defendants with respect to Count IV.

## 3. *Count V—"Good Faith and Reasonableness"*

Plaintiff alleges in Count V that: 1) defendants' actions were motivated by anticompetitive reasons rather than by legitimate concerns for quality patient care, 2) they had no reasonable basis for taking those actions, and 3) they have acted in bad faith. Plaintiff requests that he be awarded damages as a result of defendants' bad faith and unreasonable acts against him. Because this Court has concluded that defendants are immune from liability, damages under this count or any other count cannot be awarded.

Even if the defendants were not immune or plaintiff had requested injunctive relief under this count, it does not appear that Count V states a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Even if it did, defendants would be entitled to summary judgment, because plaintiff has presented no evidence that bad faith or an anti-competitive motive entered into defendants' decision-making process. There is therefore no genuine issue of material fact before this Court with respect to Count V and summary judgment will be granted to defendants on it.

## ORDER

For the reasons stated in the Memorandum, defendants' joint motion for summary judgment on all counts of the complaint is **ALLOWED.**

So Ordered.