KENNETH M. CLARK, Appellant, v. COLUMBIA/HCA INFORMATION SERVICES, INC., a Nevada Corporation; NEVADA PSYCHIATRIC COMPANY, a Nevada Corporation; IRA PAULY; PHILLIP RICH; LOUIS RICHNAK; JOHN CHAPPEL; NEAL CURY; THOMAS BITTKER; and JERRY HOWLE, Respondents.

No. 29995

June 21, 2001 25 P.3d 215

*Mirch & Mirch,* Reno, for Appellant.

*Osborne Law Office*, Reno, for Respondents Pauly, Rich, Richnak, Chappel, Bittker and Howle.

*Lionel Sawyer & Collins* and *Allen J. Wilt* and *Richard W. Horton*, Reno, for Respondents Nevada Psychiatric Company, Cury and Columbia/HCA Information Services, Inc.

# OPINION ON REHEARING

By the Court, SHEARING, J.:

This case requires that we interpret the federal Health Care Quality Improvement Act (HCQIA).[1] We must determine whether the immunity provisions of HCQIA apply so as to bar appellant Kenneth M. Clark's underlying tort and contract claims against respondents.[2] We conclude that Clark has overcome the presumption of respondents' immunity by demonstrating by a preponderance of the evidence that the revocation of his hospital staff

---

[1] 42 U.S.C. §§ 11101-11115 (1995).

[2] Respondents are individual members of the peer review board at the Truckee Meadows Hospital who revoked his staff privileges, psychiatrists who testified at the hearing, and the health care organizations supervising the hospital.

privileges was not with the reasonable belief that it was in furtherance of quality health care. Thus, respondents are not immune from liability as a matter of law. Accordingly, we reverse the order of the district court and remand for further proceedings consistent with this opinion.

## FACTS

Kenneth M. Clark is a Reno psychiatrist who specializes in child psychiatry. From 1981 to 1993, Clark had intermittent staff privileges at the Truckee Meadows Hospital, now known as West Hills Hospital.

In September 1992, the Truckee Meadows Hospital alleged that Clark was engaging in "activities or professional conduct which are disruptive to Hospital operations" in violation of Section 8.1-1 of the hospital's Medical Staff Bylaws.[3] The hospital informed Clark that it would hold a peer review board hearing concerning his conduct. The Statement of Charges specified the conduct in question as: (1) a May 17, 1991, letter to CHAMPUS (a federal insurance provider) regarding Clark's concerns about the hospital's closed staff policy "and other derogatory matters"; (2) a June 3, 1991, letter to Neal Cury explaining the letter to CHAMPUS and expressing concerns of substandard child psychiatric care; (3) September 18, 1991, and November 10, 1991, letters to the Joint Commission on Accreditation of Healthcare Organizations (JCAHO) addressing concerns with the hospital's care; (4) Clark's alleged inquiry regarding another psychiatrist's patient's care; (5) Clark's failure to abide by his agreement of May 7, 1992, to work internally to rectify his grievances and inform the hospital of his external actions; (6) Clark's alleged statements that he would "never relinquish pursuing his vendetta against the hospital"; (7) an August 1992 report to the Nevada State Board of Medical Examiners containing false allegations about another psychiatrist regarding the care of Clark's patient in violation of his May 7, 1992, agreement; and (8) allegedly doing "rounds" when he had no patients.

The reports Clark made dealt primarily with his concerns that the hospital did not follow appropriate procedures in posting random on-call schedules, provided deficient child psychiatric care, and had policies requiring premature patient discharge when patients ran out of insurance to cover their care. Clark also alleged

---

[3]Section 8.1-1 provides:

> Whenever the activities or professional conduct of any practitioner with clinical privileges are detrimental to patient safety or to the delivery of quality patient care that is optimally achievable, or are disruptive to Hospital operations, corrective action against such practitioner may be initiated by the MEC, the CEO or the Trustees.

that the hospital diverted patients from him to other psychiatrists. He further alleged that the hospital improperly used his superior credentials to qualify an affiliate hospital for accreditation although he did not work there.

At the peer review board hearing, evidence was presented detailing Clark's letters and reports to outside agencies in 1991. Respondents discussed their concerns that Clark's reporting was having an adverse impact on hospital operations by taking excessive amounts of staff time and was encouraging a distrustful atmosphere.

The hospital also mentioned its concerns with one instance involving patient "KK," who had been admitted for a drug overdose and suicidal tendencies. Clark did not keep KK for observation. Instead, he discharged KK on the day of admission, which the hospital felt was inappropriate. The hospital further stated that Clark's subsequent report to the Nevada Board of Medical Examiners concerning the hospital's response to his treatment of KK violated his agreement to work within internal processes. The hospital also mentioned allegations that Clark had inquired about another psychiatrist's patient in violation of confidentiality. Clark presented testimony rebutting these charges and explaining his actions in discharging KK.[4] No other evidence was presented of deficient psychiatric care or complaints with Clark's psychiatric practice.

After hearing evidence, the peer review board concluded that Clark's actions in reporting to outside agencies and failing to proceed with internal processes by his report to the Nevada Board of Medical Examiners constituted disruptive conduct in violation of Medical Staff Bylaws section 8.1-1. The board concluded that Clark's disruptive conduct would likely continue in the future and "eventually have an adverse impact on the quality of health care" at the hospital. Hence, the board unanimously recommended revoking Clark's staff membership and clinical privileges at the Truckee Meadows Hospital. Both the Medical Executive Committee and the Board of Trustees agreed, and they affirmed the revocation of Clark's privileges.

Clark filed an action in the United States District Court of Nevada, alleging violations of various federal antitrust provisions and state tort and contract causes of action. Respondents filed a motion for summary judgement. The federal district court granted respondents' motion on the federal antitrust claims, stating that Clark had produced no evidence to support these claims. The court further concluded that

---

[4]Clark stated that both KK and KK's father refused to voluntarily admit the patient, and he discharged KK pursuant to their wishes after informing them of the risks.

even if Clark had presented evidence of an antitrust conspiracy and antitrust injury sufficient to survive summary judgment, the defendants here are expressly insulated from liability by the Health Care Quality Improvement Act, 42 U.S.C. §§ 11111, 11112. The defendants have submitted voluminous evidence supporting their contention that the peer review process in this case complied with the statutory requirements; Clark has not rebutted that presumption.

The federal court declined to maintain supplemental jurisdiction over the pendent state law claims and dismissed them without prejudice.

Clark then filed a complaint in Washoe County District Court in August 1995. In that complaint, he alleged that respondents conspired to commit illegal conduct, divert patients away from him, and improperly terminate his staff privileges. He argued that these actions constituted tortious interference with his psychiatry practice and breached the implied covenant of good faith and fair dealing in the Medical Staff Bylaws and Regulations. Respondents filed a motion for summary judgment, claiming immunity from liability under HCQIA. The district court granted the motions for summary judgment on the basis of HCQIA immunity.[5]

This court, by a three-judge panel, issued an Order of Reversal and Remand on December 22, 2000. Respondents filed a petition for rehearing on January 15, 2001, objecting to this court's conclusions as to the applicability of HCQIA immunity in this case, and the scope of judicial review of peer review board decisions. This court granted the petition for rehearing, and transferred this case for en banc consideration. We now vacate the prior panel order and issue this opinion in place of that order.

## DISCUSSION

### Jurisdiction

As a preliminary matter, respondents contend that this court lacks jurisdiction to hear this case, citing specifically to this court's 1985 decision in *Lakeside Community Hospital v. Levenson*[6] for that proposition. In *Lakeside*, a private hospital appealed from a district court's preliminary injunction that required the hospital to grant a physician staff privileges after the hospital Board of Trustees had voted to deny those privileges.[7] In

---

[5]Respondents Columbia/HCA Information Services, Inc., and Ira Pauly filed motions to dismiss instead of motions for summary judgment, based on HCQIA immunity and improper service of the summons and the complaint, respectively. Both motions were granted.

[6]101 Nev. 777, 710 P.2d 727 (1985).

[7]*Id.* at 778, 710 P.2d at 728.

that context, this court held that the district court had no juris-diction to review the hospital Board's decision.[8] This court stated: "[t]he weight of judicial authority in this country denies judicial review of decisions of governing boards of private hospitals to appoint or remove members of their medical staffs."[9]

The language of *Lakeside*, which suggests an absolute prohibi-tion of judicial review of hospital peer review decisions, is overly broad. Although courts may not have jurisdiction to review purely administrative decisions of private hospitals, the courts of this state do have jurisdiction to hear cases alleging torts, breach of contract, violation of hospital bylaws or other actions that contra-vene public policy.

Most courts now undertake judicial review of hospital peer review board decisions in various contexts, such as claims alleg-ing race or gender discrimination, penalizing a physician for whistleblowing, or other tortious conduct.[10] Courts will not stand idly by if peer review board actions are arbitrary or capricious, contravene public policy, or are contrary to state or federally man-dated tort protections; nor will courts decline to review peer review board actions that violate contracts or a hospital's own bylaws.[11] Courts are reluctant to interfere in decisions grounded in the review boards' areas of expertise, but the tangential involve-ment of the peer review process does not foreclose judicial inter-vention in the types of disputes normally dealt with in the courts.

[8] *Id.*

[9] *Id.*

[10] *See, e.g., Samuel v. Herrick Memorial Hosp.*, 201 F.3d 830 (6th Cir. 2000); *Menkowitz v. Pottstown Memorial Medical Center*, 154 F.3d 113 (3d Cir. 1998); *Muzquiz v. W.A. Foote Memorial Hosp., Inc.*, 70 F.3d 422 (6th Cir. 1995); *Islami v. Covenant Medical Center, Inc.*, 822 F. Supp. 1361 (N.D. Iowa 1992); *Owens v. New Britain General Hosp.*, 643 A.2d 233 (Conn. 1994); *Long v. Chelsea Comm. Hosp.*, 557 N.W.2d 157 (Mich. Ct. App. 1996); *Babcock v. Saint Francis Medical Center*, 543 N.W.2d 749 (Neb. Ct. App. 1996); *Ponca City Hospital, Inc. v. Murphree*, 545 P.2d 738 (Okla. 1976); *Cooper v. Delaware Valley Medical Center*, 654 A.2d 547 (Pa. 1995); *Brinton v. IHC Hospitals, Inc.*, 973 P.2d 956 (Utah 1998); *see* Craig W. Dallon, *Understanding Judicial Review of Hospitals' Physician Credentialing and Peer Review Decisions*, 73 Temp. L. Rev. 597 (2000); *see also* Kathleen M. Dorr, *Exclusion of, or Discrimination Against, Physician or Surgeon by Hospital*, 28 A.L.R.5th 107 (1995 & Supp. 2000).

[11] *See, e.g., Samuel*, 201 F.3d 830; *Menkowitz*, 154 F.3d 113; *Muzquiz*, 70 F.3d 422; *Islami*, 822 F. Supp. 1361; *Owens*, 643 A.2d 233; *Long*, 557 N.W.2d 157; *Babcock*, 543 N.W.2d 749; *Ponca City Hospital, Inc.*, 545 P.2d 738; *Cooper*, 654 A.2d 547; *Brinton*, 973 P.2d 956. *See* Dallon, *supra* note 10; *see also* Dorr, *supra* note 10.

In his complaint, Clark has alleged tortious conduct by respondents in the peer review board's decision to terminate his staff privileges. He has also alleged that respondents terminated his staff privileges because he reported violations of medical standards—conduct we protect as a matter of public policy as whistleblowing.[12] Because Clark has alleged conduct that is actionable under our state laws, this court has jurisdiction to hear this case.[13]

*Immunity*

We now turn to the question of whether the district court erred by granting summary judgment for respondents on the basis of HCQIA immunity.[14] Summary judgment is appropriate only if there are no material issues of fact and the moving party is entitled to judgment as a matter of law.[15] The standard for granting summary judgment is somewhat unusual in HCQIA cases because a rebuttable presumption favors a determination of immunity as a matter of law.[16]

HCQIA was enacted to provide for effective peer review and interstate monitoring of incompetent physicians, and also to provide qualified immunity for peer review participants.[17] To further the second goal, HCQIA grants qualified immunity to peer review participants if the peer review action meets due process requirements and the fairness standards set forth in 42 U.S.C. § 11112(a), and establishes a rebuttable presumption that a peer review action meets these fairness standards.[18]

Under § 11112(a), respondents are immune as long as the peer

---

[12]*See Wiltsie v. Baby Grand Corp.*, 105 Nev. 291, 293, 774 P.2d 432, 433 (1989); *see also Allum v. Valley Bank of Nevada*, 114 Nev. 1313, 1321-22, 970 P.2d 1062, 1066-67 (1998).

[13]*See Meyer v. Sunrise Hosp.*, 117 Nev. 313, 22 P.3d 1142 (2001).

[14]Even though Columbia/HCA Information Services filed a motion to dismiss, instead of a motion for summary judgment, based on HCQIA immunity, we resolve its liability in the context of the motion for summary judgment with the other respondents.

[15]NRCP 56(c); *Bulbman, Inc. v. Nevada Bell*, 108 Nev. 105, 110, 825 P.2d 588, 591 (1992).

[16]*See Austin v. McNamara*, 979 F.2d 728, 733 (9th Cir. 1992); *see also Bryan v. James E. Holmes Reg'l Med. Ctr.*, 33 F.3d 1318, 1332 (11th Cir. 1994).

[17]*Austin*, 979 F.2d at 733.

[18]*Id.* at 734.

review action was taken (1) in the reasonable belief that the action was in furtherance of quality health care, (2) after a reasonable effort to ascertain the facts of the matter, (3) after adequate notice and hearing procedures were afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and (4) in the reasonable belief that the action was warranted based on the known facts.

As a result of § 11112(a)'s rebuttable presumption, respondents were entitled to summary judgment unless a reasonable trier of fact, viewing the facts in the light most favorable to Clark, could conclude that Clark has shown by a preponderance of the evidence that respondents' actions fail to satisfy at least one of the provisions of § 11112(a).[19]

Clark contends respondents are not immune because the revocation of his staff privileges was not made with the reasonable belief that it was in furtherance of quality health care. In light of the evidence before us, we agree and therefore conclude that respondents are not immune from liability as a matter of law.[20]

The legislative history of HCQIA focuses on the impact of a physician's acts on patient care and suggests that this test for immunity is satisfied "if the reviewers, with the information available to them at the time of the professional review action, would reasonably have concluded that their actions would restrict incompetent behavior or would protect patients."[21] In this vein, courts have interpreted HCQIA in order to further the stated goals of " 'improv[ing] the quality of medical care by encouraging physicians to identify and discipline other physicians who are incompetent or who engage in unprofessional behavior.' "[22] HCQIA itself provides that " '[t]he increasing occurrence of medical malpractice and the need to improve the quality of medical care have become nationwide problems that warrant greater efforts than those that can be undertaken by any individual State.' "[23]

The presumption of immunity has been interpreted by the federal courts almost exclusively in favor of finding immunity for peer review board members.[24] In fact, in only two cases have fed-

[19]*See id.* at 734; *see also Imperial v. Suburban Hosp. Ass'n, Inc.*, 37 F.3d 1026, 1030 (4th Cir. 1994).

[20]For further discussion of the interpretation of the other provisions of HCQIA, see this court's recent opinion in *Meyer v. Sunrise Hospital*, 117 Nev. 313, 22 P.3d 1142 (2001).

[21]*Austin*, 979 F.2d at 734 (emphasis omitted) (quoting H.R. Rep. No. 99-903, at 10 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6287, 6392-93).

[22]*Bryan*, 33 F.3d at 1321 (quoting H.R. Rep. No. 99-903, at 2, *reprinted in* 1986 U.S.C.C.A.N. 6287, 6384).

[23]*Id.* (quoting 42 U.S.C. § 11101(1)).

[24]*See, e.g.*, *Pamintuan v. Nanticoke Memorial Hosp.*, 192 F.3d 378 (3d Cir. 1999); *Sugarbaker v. SSM Health Care*, 190 F.3d 905 (8th Cir. 1999);

eral courts reversed an order of summary judgment based on immunity because the physician demonstrated by a preponderance of the evidence that the board failed to give appropriate fair notice and procedures in accordance with § 11112(a)(3)—*Islami v. Covenant Medical Center, Inc.*[25] and *LeMasters v. Christ Hospital.*[26] In addition, in *Brown v. Presbyterian Healthcare Services*, the Tenth Circuit upheld a district court's finding that the peer review board lacked immunity because the board only investigated two patient charts before deciding to revoke the physician's privileges, which was not a reasonable effort to obtain facts under § 11112(a)(4).[27] Moreover, in *Brown* the board reported false findings to the National Practitioner Data Bank pursuant to § 11137(c).[28]

In most of the HCQIA cases interpreting § 11112(a)(1), requiring that the action be based on a reasonable belief that it was in furtherance of quality health care, the plaintiffs claim the peer review board was not entitled to immunity because its action was based on personal bias, discrimination, improper motive, or other subjective bases.[29] In these cases, the only evidence presented was of subjective biases or motives, which did not overcome the presumption of immunity. None of these cases presented evidence showing that the board's decision was objectively unreasonable.

In contrast to the myriad other cases, we conclude that Clark has shown by a preponderance of the evidence that the revocation of his privileges was not based on a reasonable belief that it was in furtherance of quality health care. A close look at the facts of Clark's case indicates that Clark's dismissal is unique; the findings of the hospital reflect that the reason for his dismissal was

---

*Brader v. Allegheny General Hosp.*, 167 F.3d 832 (3d Cir. 1999); *Wayne v. Genesis Medical Center*, 140 F.3d 1145 (8th Cir. 1998); *Mathews v. Lancaster General Hosp.*, 87 F.3d 624 (3d Cir. 1996); *Imperial*, 37 F.3d 1026; *Bryan*, 33 F.3d 1318; *Austin*, 979 F.2d 728; *Meyers v. Logan Memorial Hosp.*, 82 F. Supp. 2d 707 (W.D. Ky. 2000); *Rogers v. Columbia/HCA of Central Louisiana, Inc.*, 971 F. Supp. 229 (W.D. La. 1997); *Egan v. Athol Memorial Hosp.*, 971 F. Supp. 37 (D. Mass. 1997); *Benjamin v. Aroostook Medical Center*, 937 F. Supp. 957 (D. Me. 1996). *See also* Scott M. Smith, *Construction and Application of Health Care Quality Improvement Act of 1986 (42 USCS §§ 11101-11152)*, 121 A.L.R. Fed. 255, 271-78, at §§ 6(a)-(c) (1994 & Supp. 2000).

[25]822 F. Supp. 1361 (N.D. Iowa 1992).

[26]791 F. Supp. 188 (S.D. Ohio 1991).

[27]101 F.3d 1324, 1333-34 (10th Cir. 1996).

[28]*Id.* at 1334.

[29]*See, e.g.*, *Sugarbaker*, 190 F.3d at 913-14; *Brader*, 167 F.3d at 840-41; *Mathews*, 87 F.3d at 634-36; *Imperial*, 37 F.3d at 1029-30; *Bryan*, 33 F.3d at 1334-35; *Austin*, 979 F.2d at 734; *Meyers*, 82 F. Supp. 2d at 714; *Rogers*, 971 F. Supp. at 234-35; *Egan*, 971 F. Supp. at 42-43; *Benjamin*, 937 F. Supp. at 974.

his apparently good faith reporting of perceived improper hospital conduct to the appropriate outside agencies, or whistleblowing. The reports were apparently made to improve the quality of health care at the hospital. Revoking Clark's privileges based on this whistleblowing activity does not objectively further quality health care under § 11112(a)(1); thus, respondents are not entitled to immunity as a matter of law for their decision to revoke Clark's staff privileges.

The conduct for which Clark was penalized was exclusively based on his reports and letters to outside doctors and regulatory agencies, complaining about the care and procedures the hospital employed in its child psychiatric practice, scheduling of doctors, and in-patient insurance policies. The hospital's findings mentioned only Clark's letter writing in support of its conclusion that Clark's conduct was disruptive and warranted revocation of his privileges. Although evidence was presented regarding concerns for Clark's care of KK, the only findings the board made in support of its decision related to Clark's external reporting.

Under Nevada law, Clark's conduct mirrors our definition of protected "whistleblowing" conduct.[30] We protect whistleblowing to encourage individuals to report dangerous or suspect behavior that may infringe on the safe and proper practice within that particular field.[31] The thwarting of Clark's good faith reporting of potentially illegal and/or unsafe psychiatric practices cannot be reasonably construed as restricting incompetent behavior or protecting patients. Good faith reporting of possible regulatory violations is done in order to improve or further quality health care. To punish a physician for reporting potentially dangerous practices to appropriate authorities to improve the quality of patient care cannot logically be construed to be an action that one could reasonably believe is in furtherance of quality health care under § 11112(a)(1).

Respondents contend, however, that they did raise one instance of poor patient care in which Clark allegedly prematurely discharged a suicidal patient without sufficient monitoring or care. This, they contend, is a sufficiently objective reason to support the revocation and maintain their immunity.

One instance of an objective basis for discipline does not per se permit a hospital to claim immunity under § 11112(a)(1) since

---

[30]*See Wiltsie*, 105 Nev. 291, 774 P.2d 432; *see also Allum*, 114 Nev. at 1321-22, 970 P.2d at 1066-67.

[31]*See Wiltsie*, 105 Nev. at 293, 774 P.2d at 433; *see also Allum*, 114 Nev. at 1321-22, 970 P.2d at 1066-67.

we review a peer review board's decision under the totality of the circumstances.[32] Our review of the record indicates that the primary concern of respondents in their deliberations was his whistleblowing activity. The bulk of the testimony and discussion revolved around Clark's external reporting, and the board even explicitly stated in its findings that its predominate concern was the impact Clark's external reporting would have on quality health care. The allegations involving KK were not only subsidiary, but were not even mentioned in the board's decision. Moreover, it appears that the board's decision was influenced by the history of numerous reports made by Clark, and its displeasure with his decision to go outside of the hospital's internal processes.

In light of these facts, we conclude that Clark has overcome the presumption of immunity by a preponderance of the evidence; hence, the board is not entitled to immunity as a matter of law. Accordingly, we reverse the order granting summary judgment and remand the case to the district court for further proceedings consistent with this opinion. Because we conclude that Clark has overcome the presumption with respect to § 11112(a)(1), we need not reach his arguments on whether the action complied with the other provisions of § 11112(a).

## Contract

Respondents also raise two counterarguments that Clark's claims should not move forward: (1) he signed a contractual release of legal claims; and (2) collateral estoppel bars his claims in light of the prior federal case. We conclude that neither of these arguments has merit.

[Headnotes 13–15]

The contractual release Clark signed cannot be held enforceable against his claims for improper revocation of privileges because the claims are based on whistleblowing activity that was not known at the time he signed the release. Contractual release terms are only enforceable against claims contemplated at the time of the signing of the release and do not apply to future causes of action unless expressly contracted for by the parties.[33] Moreover, this court will not enforce contracts that violate public policy.[34]

Clark signed the release in 1988 and his claims arose in 1991; thus, Clark could not have anticipated when he signed the release that he would have his staff privileges terminated for whistleblowing that did not occur until 1991. We also conclude that to

[32]*Pamintuan*, 192 F.3d at 389; *see also Brown*, 101 F.3d at 1334 n.9.

[33]*Chubb v. Amax Coal Co., Inc.*, 466 N.E.2d 369, 372 (Ill. App. Ct. 1984).

[34]*See Nelson v. CSAA*, 114 Nev. 345, 347-48, 956 P.2d 803, 805 (1998).

preclude Clark from raising his claims on whistleblowing activity would violate public policy. Hence, the release does not bar his claims.

*Collateral estoppel*

Respondents' collateral estoppel argument also lacks merit. Federal law governs the collateral estoppel effect of a case decided by a federal court.[35] In order for collateral estoppel to apply: (1) the parties to the prior action must be identical to, or in privity with, the parties in the current action; (2) the initial ruling must have been on the merits and final; and (3) the issues in the two actions must be identical.[36] However, a dismissal without prejudice is not a final adjudication on the merits.[37]

Even though the parties in the federal case are the same as those in the state case, no final adjudication on the merits occurred, and thus the federal case did not have a preclusive effect. The federal district court granted respondents' motion for summary judgment only on the federal antitrust claims on the basis of immunity. That court then dismissed the state law claims without prejudice, determining that it would not exercise its discretion to maintain pendent jurisdiction over those claims. Because a dismissal without prejudice is not a final adjudication, the federal court's decision to dismiss the federal complaint does not preclude Clark from pursuing his state claims.[38] Thus, we need not address whether the issues were the same in both causes of action under the third prong.

We also note that respondent Ira Pauly filed a motion to dismiss based on the lack of service of the complaint and summons pursuant to NRCP 4(i). Because Clark fails to demonstrate good cause for the lack of service, we affirm the district court's order granting Ira Pauly's motion to dismiss.[39]

---

[35]*Fireman's Fund Ins. Co. v. Intern. Market Place*, 773 F.2d 1068, 1069 (9th Cir. 1985).

[36]*Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1320 (9th Cir. 1992).

[37]*See Pedrina v. Chun*, 906 F. Supp. 1377, 1410 (D. Haw. 1995); *see also Trustees, Hotel Employers v. Royco, Inc.*, 101 Nev. 96, 98, 692 P.2d 1308, 1309 (1985).

[38]Moreover, it appears from the federal district court's order that that court reached primarily the sufficiency of evidence to sustain the antitrust claims. The issue of HCQIA immunity was mentioned merely in passing. Because the facts and causes of action underlying the state claims are different, we note that this mere mention of HCQIA does not necessarily mean that the issue was fully litigated and similar enough to preclude Clark's state claims.

[39]*See Scrimer v. Dist. Ct.*, 116 Nev. 507, 998 P.2d 1190 (2000).

## CONCLUSION

Accordingly, we conclude that the district court erred in granting summary judgment for respondents on the basis of HCQIA immunity, given that the hospital decision was made on factors that do not reasonably further quality health care. Hence, we conclude that respondents are not immune as a matter of law, and we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.[40]

MAUPIN, C. J., ROSE, LEAVITT and BECKER, JJ., concur.

---

[40]THE HONORABLE CLIFF YOUNG, Justice, and THE HONORABLE DEBORAH A. AGOSTI, Justice, voluntarily recused themselves from participation in the decision of this matter.