**Jeffrey BLANCK, Plaintiff,**

v.

**James L. HAGER, an individual; Washoe County School District, a political subdivision of the State of Nevada, Defendants.**

No. CV–N–04–0051–PMP(RAM).

United States District Court, D. Nevada.

Feb. 14, 2005.

Shannon M. Bryant, Shannon Bryant, Law Office Of, Jeffrey A. Dickerson, Jeffrey A. Dickerson, Reno, NV, for Blanck, Jeffrey, Plaintiff.

Brad M. Johnston—008515, Hale Lane Peek, Dennison & Howard, Reno, NV, for Hager, James L., Washoe County School District, Defendants.

## ORDER

PRO, Chief Judge.

Presently before the Court is Defendants' Motion to Dismiss or in the Alternative for Summary Judgment (Doc. # 15) filed on August 20, 2004. Defendants also filed Defendants' Statement of Undisputed Material Facts (Doc. # 16) on August 20, 2004. Plaintiff Jeffrey Blanck ("Blanck") filed Plaintiff's Opposition to Motion to Dismiss or in the Alternative for Summary Judgment; Alternative Request for Leave to Amend (Doc. # 18) on October 12, 2004. Defendant filed a Reply (Doc. # 24) on November 29, 2004.

### I. BACKGROUND

Defendant Washoe County School District ("Washoe") began a search for general counsel in 2003. (Defs.' Mot. to Dismiss or in the Alternative for Summ. J. ("Defs.' Mot. to Dismiss"), Ex. 1.) In the job announcement circulated for the position, Washoe described the job as, "a full-time, at will, administrative position serving at the pleasure of the Board of Trustees." (*Id.*) The job description of the general counsel included a variety of functions, including: the general counsel was to advise the Washoe County School Board of Trustees on legal matters; research and answer a variety of legal questions from the Board, Superintendent, staff, and public; represent the District in administrative and judicial hearings; review and draft legal documents; monitor legal cases, claims suits, and grievances; ensure development maintenance, and monitoring of due process procedures for students; assist in personnel and labor negotiations; conduct programs of preventative law; coordinate and assist with outside counsel; and provide legal assistance in the drafting

of proposed state legislation. (*Id.*) Plaintiff was hired for the position of Washoe County School District's general counsel in 1998. (*Id.* at 2.)

Plaintiff commenced his employment for Washoe on January 15, 1998. (Defs.' Mot. to Dismiss at 2.) Plaintiff entered into a subsequent employment contract with Washoe on July 1, 2000. (Defs.' Mot. to Dismiss, Ex. 2.) The relevant portions of the employment contract provide:

2. Employee shall be a full-time employee and be entitled to twenty (20) days of vacation per year, and two (2) Administrative Leave days per year. Employee shall be allowed to accrue up to a maximum of sixty (60) days vacation and four (4) days Administrative Leave. Employee shall also be entitled to accrue sick leave at the rate of fifteen (15) days per year. After Employee has worked ten (10) years for the District, he shall be entitled to receive payment of twenty-five percent (25%) of the accrued sick leave upon separation from the District.

. . . . .

4. Employee shall be entitled to all medical, dental, vision and other benefits as set forth in Exhibit "B" attached hereto. Additionally, employee is entitled to participate in the Administrator's Benefit Reserve Program or Longevity Bonus Program. Because employee holds a Juris Doctorate Degree, he is entitled to an annual stipend of One Thousand Dollars ($1,000.00) per year. Additionally, employer shall pay for all annual Bar fees, continuing legal education classes and related travel expenses. In addition to these benefits, employee is entitled to any and all benefits given to Administrators employed by the District, as provided through a Collective Bargaining Agreement.

5. All provisions of NRS 391 pertaining to Licensed Administrative Employees, including but not limited to discipline, dismissal and contract renewal shall apply to General Counsel.

6. For the purposes of this Agreement, the General Counsel is deemed to be the equivalent of an Area Superintendent and is entitled to all salary and benefits associated with the program.

(Defs.' Mot. to Dismiss, Ex. 2.) Defendants allege that Plaintiff drafted and prepared the employment contract and did not advise Washoe to seek outside counsel to provide independent legal advice regarding the agreement. (Defs.' Mot. to Dismiss at 2.) Plaintiff does not respond to Defendants' allegations on this point.

Section 5 of the employment contract provides that Nevada Revised Statute 391 shall apply to Plaintiff, as general counsel. Nevada Revised Statute 391 is a statutory scheme which was developed to provide objective evaluation of teachers and licensed administrators in the public school system. N.R.S. 391.3125. Under Nevada Revised Statute 391, Administrator is defined as, "any employee who holds a license as an administrator and who is employed in that capacity by a school district." N.R.S. 391.011(1). Should a school district intend to dismiss an employee, N.R.S. 391 provides for the right to notice and certain procedures prior to disciplinary action. N.R.S. 391.317.

It is unclear to what extent Plaintiff was permitted to perform all of his defined duties. (Pl.'s Opp. to Mot. to Dismiss or in the Alternative for Summ. J., Ex. 1.) Plaintiff states in his sworn affidavit that Defendant James L. Hager ("Hager"), the Washoe County School District Superintendent, prevented him from performing the full extent of his duties, and that at no time did he make policy for the school district. (*Id.*) Specifically, Plaintiff states:

I made no policy at the District. My authority to act was subject to Board approval on the majority of my job.

Hager and Board members, as well as the Risk Manager for the District, should agree that I could give legal advice only when asked to do so, and that such occasions were limited in number and scope.... I had no authority to speak for Hager and the Board. The District spoke through Hager or the Communications Officer. I had no *carte blanche* authority to settle cases or to bring cases to litigation, and had to seek and obtain that authority on a piecemeal basis. There could be no public perception of myself as a representative to the District, as I was never at the forefront as such. I had no influence over programs or their implementation. I could advise as to legal requirements, but not as to policy matters. I had no official contact with elected officials except to testify before the Legislature as to the merits of the statutory cap on damages against governmental entities and officials....

(*Id.*) On November 3, 2003, Defendant Hager issued Plaintiff a letter regarding Plaintiff's job performance and conduct, stating Plaintiff had engaged in insubordinate and unprofessional conduct. (Defs.' Mot. to Dismiss, Ex. 3.) The letter set forth issues Hager deemed necessary to resolve in order for Defendant Washoe to continue to employ Plaintiff.[1] (*Id.*) The correspondence concluded:

The relationship of attorney-client is one based on trust and confidence. Your actions over the past several months have breached that trust and I have thereby lost confidence in your loyalty to WCSD and me, your supervisor and the WCSD representative. Your above described actions also demonstrate a severe lack of sound judgment, particularly for a general counsel, a position of high trust and confidence.

I would like to meet with you on Friday, November 7, 2003 at 1:30 PM in my office to discuss the issues, which are set forth above and provide you with an opportunity to respond. Stephen Peek, special counsel to the WCSD, and Laura Dancer will be in attendance at this meeting. If you would like to have a representative at this meeting, please advise me no later than Thursday, November 6, 2003.

(*Id.* at 3.) In a letter dated November 14, 2003, Plaintiff responded to Hager's letter stating that Hager's allegations were malicious and unfounded. (Defs.' Mot. to Dismiss, Ex. 7.) Additionally, Plaintiff stated that Hager had not explained the purpose or intent of the meeting, including whether it was to discuss termination and whether Washoe recognized his status as an Administrator under N.R.S. 391. (*Id.* at 4.)

On November 19, 2003, Plaintiff met with Hager, Special Counsel Stephen Peek

---

1. Hager alleged the following instances as examples of insubordination and unprofessional conduct: 1) Plaintiff's refusal to follow Hager's directives with regard to Washoe's reorganization plan and insistence that Washoe hire additional general counsel to serve as Plaintiff's subordinate; 2) Plaintiff's failure to follow the chain of command through Hager, including submitting recommendations and comments to the Board of Trustees prior to disclosure, review, and/or comment by Hager; 3) Plaintiff's suggestion to the Trustees that Hager had taken inappropriate actions, allegedly made without foundation; 4) a memorandum, dated October 20, 2003, sent to the Board without consulting Hager; 5) Plaintiff's filing of an unauthorized complaint, written on Washoe County School District stationary, with the State Bar of Nevada against Robert Cox, Washoe's outside counsel, alleging ethical and professional misconduct; 6) Plaintiff's alleged attempts to interfere with and control the provision of legal services by retained outside counsel when sought by Hager and the Trustees; 7) Plaintiff's alleged unprofessional conduct at a District Board meeting; 8) Plaintiff's unwillingness to attend a grievance hearing and other job responsibilities. (Defs.' Mot. to Dismiss, Ex. 3 at 2–3.)

("Peek") and Assistant Superintendent, Human Resources, Laura Dancer concerning the issues raised in Hager's November 3 letter. (Defs.' Mot. to Dismiss at 5.) In a memorandum dated November 19, 2003, Plaintiff directly responded to Hager's November 3, 2003 letter by categorically denying all allegations made. (Defs.' Mot. to Dismiss, Ex. 8 at 1.) Plaintiff argued that pursuant to his employment contract, Hager does not have the authority to conduct any discipline regarding Plaintiff's performance, but rather only has the power of evaluation. (*Id.*)

Following this hearing, on or about November 21, 2003, Plaintiff filed a criminal complaint against Hager, alleging that Hager had illegally misappropriated district funds to the United Way totaling $2,200, and to the Foster Grandparent Program totaling $5,000. (Defs.' Mot. to Dismiss at 5; Ex. 10) On December 16, 2003, Washoe issued a letter concluding that "the allegations were unfounded and/or of no substance." (Defs.' Mot. to Dismiss, Ex. 9.) On January 9, 2004, the Washoe County District Attorney issued a no-issue memorandum declining to issue a criminal complaint in the matter. (Defs.' Mot to Dismiss, Ex. 10.) Specifically, the memorandum stated that "contrary to Mr. Blanck's opinion, I do not find any evidence to support the allegations. The Board of Trustees properly exercised their authority to authorize all of the conduct complained of." (*Id.*) On June 21, 2004, Plaintiff filed a Petition for Grand Jury Investigation, alleging misuse of bond funds, misuse of funds for the construction of Damonte Ranch High School, illegal gifts of general funds to private entities, and misuse of general funds for alleged legal services. (Defs.' Mot. to Dismiss, Ex. 11.)

On January 16, 2004, Hager issued Plaintiff a notice of suspension and intention to recommend dismissal. (Defs.' Mot. to Dismiss, Ex. 12.) The stated purpose of the letter was "to also notify [Plaintiff] that on February 10, 2004, [Hager would] recommend to the Board of Trustees of WCSD that [Plaintiff's] employment as General Counsel with WCSD be terminated." (*Id.*) Hager listed several reasons for his recommendation, many of them reiterating his initial November 3, 2003 letter. (*Id.*) Furthermore, in the letter Hager stated that it was Washoe's position that Plaintiff was an at will employee who did not have any rights under N.R.S. 391. (*Id.* at 14–15.) Finally, the letter issued the following notice of procedure:

> As indicated above, this recommendation will be submitted to the Board on February 10, 2004. If however, you submit a written request to me within 10 days after receipt of this letter, my recommendation will not be presented to the Board, but an advisory hearing will be held before a neutral hearing officer from a list provided by the American Arbitration Association, who will issue a report and recommendation concerning whether the bases for your termination are substantiated. Such report and recommendation will then be submitted to the Board of Trustees who can either accept or reject the hearing officer's recommendation. Nevertheless, as indicated above, although I am providing you with the opportunity for this advisory hearing, WCSD reserves the right to contend that you are an at will employee and that you have no rights under NRS, Chapter 391.

(*Id.*) On January 16, 2004, Plaintiff requested a hearing before a neutral officer. (Defs.' Mot. to Dismiss, Ex. 13.) On January 22, 2004, Washoe, through their attorney, Peek, requested that the American Arbitration Association ("AAA") provide the parties with a recommendation of seven hearing officers. (Defs.' Mot. to Dis-

miss, Ex. 17.) The AAA provided both parties with a list of seven arbitrators on February 2, 2004. (Defs.' Mot. to Dismiss, Ex. 18.) Additionally, the AAA gave the parties until February 12, 2004, which was later extended to February 19, 2004, to select an arbitrator. (*Id.*) Plaintiff or his attorneys never responded to the AAA. (Defs.' Mot. to Dismiss, Ex. 20.) Due to Plaintiff's failure to respond, Plaintiff's request was deemed withdrawn and Hager submitted his recommendation for termination to the Board of Directors for the Washoe County School District. (Defs.' Mot. to Dismiss, Exs. 20–21.) On March 8, 2004, Hager filed his recommendation for dismissal of Jeffrey Blanck as General Counsel for the Washoe County School District. (Defs.' Mot. to Dismiss, Exs. 25, 26.)

Plaintiff originally filed this Complaint in this Court against Defendants Washoe and Hager alleging First Amendment retaliation, breach of contract, breach of the covenant of good faith and fair dealing, denial of procedural and substantive due process, tortious interference with contract, tortious discharge, negligent supervision and retention, defamation, and retaliation for whistle blower activity. (Am. Compl.) Plaintiff claims he is entitled to past and future general and special damages and punitive damages pursuant to N.R.S. 357.250. Additionally, Plaintiff claims he is entitled to reasonable attorney's fees and costs of suit. (*Id.* at 10.)

Defendants argue this Complaint should be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Alternatively, Defendants argue that are entitled to summary judgment. First, Defendants argue that Plaintiff cannot allege a cognizable First Amendment retaliation claim because he was a policymaking or confidential employee of Washoe and therefore his speech does not receive First Amendment protection. Second, Defendants argue that Plaintiff's breach of contract, breach of the covenant of good faith, and procedural and substantive due process claims should be dismissed for failure to state a claim, or alternatively that they are entitled to summary judgment. Specifically, Defendants argue that Washoe complied with the procedural requirements of N.R.S. 391, and therefore neither breached the employment contract nor violated Plaintiff's due process rights. (Defs.' Mot. to Dismiss at 17.) Third, Defendants argue that as a matter of law Plaintiff cannot assert a claim for tortious interference with contractual relations. Defendants argue that both Washoe and Hager are parties to the contract, and therefore cannot, as a matter of law, tortiously interfere with a contract to which they are a party. (*Id.* at 21.) Fourth, Defendants argue that Plaintiff's claims for tortious discharge and retaliation for whistleblower activity should be dismissed. Specifically, Defendants argue Plaintiff was afforded sufficient due process, Plaintiffs claims are not brought in good faith, and that Plaintiff has not proven causation. Fifth, Defendants argue that Plaintiff's negligent supervision and retention claim fails as a matter of law because it is barred by the economic loss doctrine. Finally, Defendants argue that Plaintiff has failed to allege the elements of a defamation claim including the defamatory statements themselves and the publication of said statements.

Plaintiff responds that Defendants' motion to dismiss and/or summary judgment should be denied for several reasons. Plaintiff argues that Defendants' motion should be treated only as a motion to dismiss, therefore should the court find an insufficient pleading Plaintiff should have leave to amend. Regarding his First Amendment claim, Plaintiff argues that the policymaker exception does not apply because Plaintiff's responsibilities as general counsel varied widely and did not rise to a policymaking position. Additionally,

Plaintiff argues that whether his position was a policymaking one is a question of fact that recovers discovery, thus Defendants' motion is premature.

Plaintiff next argues that Defendants are in breach of the employment contract, governed by N.R.S. 391, and therefore Defendants' motion should be denied. Plaintiff argues that Defendants failed to provide notice and an opportunity to correct, and therefore violated the procedural requirements of N.R.S. 391 and the employment contract. Further, Plaintiff argues that there is a distinct difference between an arbitrator and a hearing officer, and therefore Defendants' failure to provide a hearing officer was a further violation of N.R.S. 391 and the employment contract.[2] For the same reasons, Plaintiff argues that the due process claims withstand Defendants' motion.

Plaintiff argues that his claims for tortious discharge and retaliation for whistle blower activity are made pursuant to N.R.S. 357.250, which Plaintiff argues Defendants do not address, therefore Defendants' motion should be denied. Regarding the claim for negligent supervision, Plaintiff argues that the economic loss doctrine is inapplicable because Nevada does not extend the economic loss doctrine beyond situation regarding property loss. Finally, Plaintiff argues that he should have the right to amend the pleading for defamation, although does not provide an argument as to why this Court should allow amendment.

## II. LEGAL STANDARD

### A. Federal Rule Civil Procedure 12(b)(6)

 In considering a motion to dismiss, "all well-pleaded allegations of mate-

rial fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit Partnership v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir.1998) (citation omitted). However, the Court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in Plaintiff's Complaint. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir.1994). There is a strong presumption against dismissing an action for failure to state a claim. *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir.1997) (citation omitted). The issue is not whether Plaintiff will ultimately prevail, but whether he may offer evidence in support of his claims. *See id.* at 249 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). Consequently, the Court may not grant a Motion to Dismiss for failure to state a claim "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also, Hicks v. Small*, 69 F.3d 967, 969 (9th Cir.1995).

 The liberal rules of notice pleading set forth in the Federal Rules of Civil Procedure do not require a plaintiff to set out in detail the facts supporting his claim. *See Yamaguchi v. United States Dep't of the Air Force*, 109 F.3d 1475, 1481 (9th Cir.1997) (quoting *Conley v. Gibson*, 355 U.S. at 47, 78 S.Ct. 99). All the Rules require is a "short and plain statement" that adequately gives the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Yamaguchi*, 109 F.3d at 1481 (citations and internal quotations omitted). Therefore, a

---

**2.** Plaintiff does not offer any additional evidence to support this position. Nor does Plaintiff offer any additional evidence as to the distinction between a hearing officer and an arbitrator. (Pl.'s Opp. to Mot. to Dismiss or in the Alternative for Summ. J. at 7.)

plaintiff merely must plead sufficiently to "establish a basis for judgment against the defendant." *Id.* at 1481 (citation omitted). Further, a claim is sufficient if it shows that the plaintiff is entitled to any relief which the court can grant, even if the complaint asserts the wrong legal theory or asks for improper relief. *See United States v. Howell,* 318 F.2d 162, 166 (9th Cir.1963).

### B. Federal Rule of Civil Procedure 56

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" demonstrate "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56©. The substantive law defines which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All justifiable inferences must be viewed in the light most favorable to the non-moving party. *County of Tuolumne v. Sonora Cmty. Hosp.,* 236 F.3d 1148, 1154 (9th Cir.2001).

The party moving for summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 531 (9th Cir.2000). The burden then shifts to the non-moving party to go beyond the pleadings and set forth specific facts demonstrating there is a genuine issue for trial. *Id.; Far Out Prods., Inc. v. Oskar,* 247 F.3d 986, 997 (9th Cir.2001).

### III. DISCUSSION

#### A. First Amendment Retaliation (Count 1)

"A government employer 'cannot condition public employment on a basis that infringes the employee's constitution-

ally protected interest in freedom of expression.' " *Coszalter v. City of Salem,* 320 F.3d 968, 974 (9th Cir.2003) (citing *Connick v. Myers,* 461 U.S. 138, 142, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). A government employer cannot use the employment relationship as a means to retaliate when a government employee exercises his protected right of free expression. *Id.* "The precise nature of the retaliation is not critical to the inquiry in First Amendment retaliation cases." *Id.* at 975. The government retaliation need not be severe enough to qualify as an adverse employment action. *Id.* Rather, the relevant inquiry is whether the state took action to retaliate against and chill political expression. *Id.* (citing *Thomas v. Carpenter,* 881 F.2d 828, 829 (9th Cir.1989)). To establish a First Amendment retaliation claim Plaintiff must establish the following:

> (1) [he] engaged in expressive conduct that addressed a matter of public concern; (2) the government officials took an adverse action against it; and (3) its expressive conduct was a substantial or motivating factor for the adverse action.

*Alpha Energy Savers, Inc. v. Hansen,* 381 F.3d 917, 923 (9th Cir.2004). Additionally, a threshold inquiry in a claim for First Amendment retaliation is whether the employee was a policymaking or confidential employee. In *Walker v. City of Lakewood,* the Ninth Circuit held that "an employee's status as a policymaking or confidential employee [is] dispositive of any First Amendment retaliation claim." 272 F.3d 1114, 1131 (9th Cir.2001) (quoting *Biggs v. Best, Best, & Krieger,* 189 F.3d 989, 994–95 (9th Cir.1999)). Whether an employee is a policymaking or confidential employee is a mixed question of law and fact. *Id.* This is because "[d]etermining the particular duties of a position is a factual question, while determining whether those duties ultimately make that position a policymaking or confidential question is a question of

law." *Hobler v. Brueher*, 325 F.3d 1145, 1150 (9th Cir.2003) (citing *Walker*, 272 F.3d at 1131.)

■ The policymaker exception is broader than those individuals who make policy. *Id.* at 1150. The question of whether the policymaker exception applies "is properly determined by summary judgment or occasionally a motion to dismiss rather than a trial, at least where the duties of the position, insofar as they are material, are not genuinely at issue." *Id.* at 1150–51. In fact, where the material duties of a position are not at issue, "the question of 'whether these duties ultimately make that position a policymaking or confidential [position] cannot properly be submitted to a jury because it is a question of law.'" *Id.* (citing *Walker*, 272 F.3d at 1131).

Defendants argue that Plaintiffs' position as general counsel is inherently a policymaking position, and therefore Plaintiff is not entitled to relief for his claim of First Amendment retaliation. (Def.'s Mot. to Dismiss at 13.) Defendants argue that the attorney/client relationship is a special relationship predicated on trust and reliance. In particular, as general counsel, Plaintiff was called upon to advise the District regarding political and legal matters and to advocate for and represent the District in court and to the public at large. Should Plaintiff's position not be considered policymaking for the purpose of the policymaker exception, Defendants argue Washoe, as well as others similarly situated, would be in the position of having to retain legal counsel who not only disagree with government policy, but publicly criticize the organization for which they have been hired to advocate. Finally, Defendants argue that the attorney client privilege alone would suffice to make Plaintiff a confidential employee under the policymaker exception.

Plaintiff argues that he was prevented from performing his discretionary duties, such that his work should not qualify as a policymaker position. (Pl.'s Opp. to Mot. to Dismiss or in the Alternative Mot. for Summ. J. at 3.) In Plaintiff's affidavit, he states that he did not make any policy at the District. (Pl.'s Opp. to Mot. to Dismiss or in the Alternative Mot. for Summ. J., Ex. 1 at 1.) Plaintiff further argues that discovery will disclose that Hager varied Plaintiff's duties considerably, limiting what policymaking function he might have had. Additionally, Plaintiff argues that he was not terminated based on his political beliefs, and therefore the policymaker exception does not apply. (Pl.'s Opp. to Mot. to Dismiss or in the Alternative Mot. for Summ. J. at 4.)

■ Viewing all facts in favor of Plaintiff, the non-moving party, Defendants are entitled to summary judgment for Plaintiff's claim of First Amendment retaliation. In *Biggs* the Ninth Circuit held that the unique responsibilities of an attorney may constitute a policymaker position:

Many cases have addressed the role of attorneys in city government, and almost all of them have found such attorneys to be policymakers subject to patronage discharges. "'All circuit court decisions-and almost all other court decisions-involving attorneys in government services, other than public defenders, have held that *Elrod/ Branti* do not protect these positions.'" ... In finding city attorneys, and assistant and deputy city attorneys, to be policymaking officials, the courts have relied on several factors. Cases have considered the fact that the position requires technical expertise, and often involved performing discretionary functions, advising city officials, representing the city, planning to implement city goals, drafting

ordinances, negotiating contracts, and rendering legal opinions.

189 F.3d at 995. The unique responsibilities of a government attorney make such positions policymaking positions, and therefore subject to patronage discharge. Blanck, as general counsel to Washoe, advised school board officials, represented the school board in legal disputes, including labor and employment arbitration and in litigation matters, testified in front of the legislature in the capacity as the Washoe County School District general counsel, and coordinated with outside counsel regarding legal matters involving Washoe. To be considered a policymaker for the purpose of a First Amendment retaliation claim, Plaintiff need not directly create policy, or have carte blanche authority over all litigation, as Plaintiff suggests. The policymaker exception is not limited to only those who create policy. *See Hobler,* 325 F.3d at 1150. Rather, Plaintiff's responsibilities of rendering legal opinions, advising Washoe, and representing Washoe in litigation matters is sufficient to establish him as a policymaking

or confidential employee. As a matter of law, Plaintiff was a policymaking or confidential employee, and therefore is not entitled to claim First Amendment retaliation. For this reason, the Court will grant Defendants' motion for summary judgment with regard to Plaintiff's claim for First Amendment retaliation (Count 1).

## B. Breach of Contract (Count 2)

█ In Nevada, "[e]mployment contracts are ordinarily and presumably contracts which are terminable at will; however, an employer may expressly or impliedly agree with an employee that employment is to be for an indefinite term and may be terminated only for cause or only in accordance with established policies or procedures." *D'Angelo v. Gardner,* 107 Nev. 704, 819 P.2d 206, 211 (1991). Grounds for termination of employment for contracts made pursuant to N.R.S. 391 are defined by N.R.S. 391.312.[3] Should a school administrator believe an employee should be disciplined under N.R.S. 391.312, he is required to follow procedure pursuant to N.R.S. 391.313:

---

**3.** N.R.S. 391.312 provides:

1. A teacher may be suspended, dismissed or not reemployed and an administrator may be demoted, suspended, dismissed or not reemployed for the following reasons:

 (a) Inefficiency;
 (b) Immorality;
 (c) Unprofessional conduct;
 (d) Insubordination;
 (e) Neglect of duty;
 (f) Physical or mental incapacity;
 (g) A justifiable decrease in the number of positions due to decreased enrollment or district reorganization;
 (h) Conviction of a felony or of a crime involving moral turpitude;
 (i) Inadequate performance;
 (j) Evident unfitness for service;
 (k) Failure to comply with such reasonable requirements as a board may prescribe;
 (*l*) Failure to show normal improvement and evidence of professional training and growth;

 (m) Advocating the overthrow of the Government of the United States or of the State of Nevada by force, violence or other unlawful means, or the advocating or teaching of communism with the intent to indoctrinate pupils to subscribe to communistic philosophy;
 (n) Any cause which constitutes grounds for the revocation of a teacher's license;
 (*o*) Willful neglect or failure to observe and carry out the requirements of this Title;
 (P) Dishonesty;
 (q) Breaches in the security or confidentiality of the questions and answers of the achievement and proficiency examinations that are administered pursuant to NRS 389.015;
 (r) Intentional failure to observe and carry out the requirements of a plan to ensure the security of examinations adopted pursuant to NRS 389.616 or 389.620; or
 (s) An intentional violation of NRS 388.5265 or 388.527.

1. Whenever an administrator charged with supervision of a licensed employee believes it is necessary to admonish the employee for a reason that he believes may lead to demotion, dismissal, or cause the employee not to be reemployed under the provisions of NRS 391.312, he shall:

(a) Except as otherwise provided in subsection 2, bring the matter to the attention of the employee involved, in writing, stating the reasons for the admonition and that it may lead to his demotion, dismissal or a refusal to reemploy him, and make a reasonable effort to assist the employee to correct whatever appears to be the cause for his potential demotion, dismissal or a potential recommendation not to reemploy him; and

(b) Except as otherwise provided in NRS 391.314, allow reasonable time for improvement, which must not exceed 3 months for the first admonition.

However, "[i]f a superintendent has reason to believe that cause exists for the dismissal of a licensed employee and he is of the opinion that the immediate suspension of the employee is necessary in the best interests of the pupils in the district, the superintendent may suspend the employee without notice and without a hearing." N.R.S. 391.314(1). Additionally, N.R.S. 391.314(4) allows an employee to continue to receive his salary during the period of suspension if the employee furnishes the school district with a bond or other security as a guarantee that he or she will repay any amounts paid during that time, should suspension become final and binding. Finally, a notice of intention to recommend demotion, dismissal or refusal to reemploy must comply with the procedural requirements of N.R.S. 391.317:

1. At least 15 days before recommending to a board that it demote, dismiss or not reemploy a post probationary em-

ployee, or dismiss or demote a probationary employee, the superintendent shall give written notice to the employee, by registered or certified mail, of his intention to make the recommendation.

2. The notice must:

(a) Inform the licensed employee of the grounds for the recommendation.

(b) Inform the employee that, if a written request therefor is directed to the superintendent within 10 days after receipt of the notice, the employee is entitled to a hearing before a hearing officer.

(c) Inform the employee that he may request appointment of a hearing officer from a list provided by the American Arbitration Association and that one will be appointed if the superintendent agrees in writing.

(d) Refer to chapter 391 of NRS.

Defendants argue they are entitled to summary judgment for Plaintiff's claim for breach of contract claim for a number of reasons. First, Defendants argue that N.R.S. 391.314 provides a subjective standard under which a superintendent may use his discretion to suspend an employee. Defendants thus argue Hager's decision, made with the belief that it was in the best interest of the school district, was in compliance with N.R.S. 391 and not a breach of contract. Second, Defendants argue that the District fully complied with the procedural requirements of N.R.S. 391.314 and 391.317. Specifically, Defendants argue that Plaintiff was offered the opportunity to continue to receive his salary by furnishing a bond, but declined to do so, Plaintiff was given a meaningful opportunity to be heard, and was provided with the opportunity for a hearing with a neutral hearing officer which he declined.

Plaintiff responds that Defendants failed to provide him with notice and an opportunity to correct as required by N.R.S.

391.313. Furthermore, Plaintiff argues that there is a distinction between a hearing officer under N.R.S. 391 and an arbitrator, and therefore Defendants are in breach of the employment contract. According to Plaintiff, N.R.S. 391.317 requires that unless there is an agreement to go to the AAA, the hearing must be before a hearing officer.

 Viewing all evidence in a light favorable to Plaintiff, no reasonable jury could find a breach of contract, therefore summary judgment is appropriate. First, the distinction Plaintiff attempts to make between a hearing officer and an arbitrator under N.R.S. 391.317 is untenable. Read as whole, N.R.S. 391.317 does not distinguish between a hearing officer and an arbitrator, but rather states that a hearing officer may be appointed from a list provided by the AAA; in other words, for the purpose of N.R.S. 391.317 a hearing officer and an arbitrator are one in the same.

Furthermore, Defendants have complied with the due process requirements of N.R.S. sections 391.317 and 391.314. Plaintiff was given notice of his alleged misconduct in November, 2003, and was given an opportunity to correct. (Defs.' Mot. to Dismiss, Ex. 3.) Additionally, compliant with N.R.S. 391.317, Hager provided Plaintiff with a notice of his intention to make the recommendation for termination. (Defs.' Mot. to Dismiss, Ex. 12.) Upon Plaintiff's request for a hearing, Defendants again complied by promptly contacting the AAA for a list of approved hearing officers. Finally, Plaintiff was offered compensation upon the condition that he furnish a bond for security in compliance with N.R.S. 391. 314. Plaintiff has not demonstrated a genuine issue of material fact exists regarding Defendants' compliance with the requirements of N.R.S. 391 or a breach of employment contract, there-

fore summary judgment is appropriate on Count 2.

## C. Breach of the Covenant of Good Faith and Fair Dealing (Count 3)

 In Nevada, the covenant of good faith and fair dealing is implied into every contract. *A.C. Shaw Constr., Inc. v. Washoe County,* 105 Nev. 913, 784 P.2d 9, 10 (1989). "Tort liability for breach of the implied covenant of good faith and fair dealing is appropriate where 'the party in the superior or entrusted position has engaged in grievous or perfidious misconduct.'" *State, Univ. and Cmty. Coll. Sys. v. Sutton,* 103 P.3d 8, 19 (2004). Plaintiff claims that Defendants "interfered with Plaintiff's right to perform under the agreement, and right to perform in compliance with his ethical obligations, thereby denying Plaintiff the benefit to which he is entitled under the contract." (Am. Compl. at 5.)

Defendants argue the Court should dismiss that Plaintiff's claim for failure to state a claim or grant Defendants' summary judgment. Defendants argue that as a matter of law, the District did not breach the covenant of good faith and fair dealing, because Defendants provided Plaintiff with an opportunity for a neutral hearing pursuant to N.R.S. 391, which Plaintiff voluntarily chose to waive.

 Viewing all reasonable inferences in a light most favorable to Plaintiff, the non-moving party, Defendants have demonstrated an absence of genuine material fact regarding Plaintiff's claim for breach of the covenant of good faith and fair dealing. Plaintiff offers no evidence that Defendants were not compliant with the procedures of N.R.S. 391, nor does Plaintiff offer any argument in favor of this claim in subsequent briefing following the Complaint. Accordingly, the Court will grant Defendants' motion for summary

judgment with regard to Plaintiff's claim for breach of the covenant of good faith and fair dealing.

### D. Denial of Procedural and Substantive Due Process (Count 4)

#### 1. Procedural Due Process

Defendants argue that in addition to the absence of genuine issues of material facts regarding Defendants' compliance with N.R.S. 391, they are entitled to summary judgment because Plaintiff decided to forego the N.R.S. 391 hearing, therefore he is precluded from pursuing a procedural due process claim. Plaintiff does not substantively respond to Defendants' arguments, stating only the following:

> The due process argument can be answered with the same points with which Plaintiff responds to the breach of contract claim and Plaintiff incorporates those by reference. As the name-clearing, the same arguments apply.

(Pl.'s Opp. to Mot. to Dismiss or in the Alternative for Summ. J. at 7.)

■■■ "Due process is a flexible concept and its procedural requirements vary depending upon the particular deprivation." *Orloff v. Cleland,* 708 F.2d 372, 378 (9th Cir.1983). "There is a strong presumption that a public employee is entitled to notice and an opportunity to be heard before being deprived of a liberty or property interest. *Orloff,* 708 F.2d at 379 (citing *Vanelli v. Reynolds School District No. 7,* 667 F.2d 773, 778 (9th Cir.1982)). However, "where adequate administrative procedures exist, a person cannot state a claim for denial of procedural rights when he has elected to forego a complete hearing." *Correa v. Nampa Sch. Dist. No. 131,* 645 F.2d 814, 817 (9th Cir.1981) (citing *Bignall v. N. Idaho College,* 538 F.2d 243, 247 (9th Cir.1976)).

■■■ Viewing all evidence in favor of Plaintiff this Court grants Defendants' Motion for Summary Judgment with regard to Plaintiff's claim for denial of procedural due process. First, Plaintiff has not demonstrated a genuine issue of material fact exists regarding Defendants' compliance with the procedural requirements of N.R.S. 391. Additionally, Plaintiff was given an opportunity for a neutral hearing, in compliance with N.R.S. 391.317, which he waived by failing to act after the AAA provided a list of approved arbitrators. There is no evidence in the record that the administrative procedures followed by Defendants were inadequate. For these reasons, the Court will grant Defendants' motion for summary judgment with regard to Plaintiff's claim for violation of procedural due process. *See Correa,* 645 F.2d at 817.

#### 2. Substantive Due Process

■■■ "As early as 1972, in *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the United States Supreme Court established that a terminated employee has a constitutionally based liberty interest in clearing his name when stigmatizing information regarding the reasons for his termination is publicly disclosed." *Cox v. Roskelley,* 359 F.3d 1105, 1110 (9th Cir.2004). "[P]lacement of stigmatizing information in an employee's personnel file constitutes publication when the governing state law classified an employee's personnel file as a public record." *Id.* at 1112. Failure by the state to provide a "name clearing" hearing is considered a due process violation. *Id.* In Nevada, there is no state law mandating the public disclosure of an employee's personnel record.

■■■ Plaintiff alleges that Defendants have denied him the opportunity for a "name clearing" hearing and thus have violated his substantive due process rights. Defendants argue that Plaintiff's claim should be dismissed for two reasons: (1) Washoe did not publicly disclose the rea-

sons for Blanck's termination until long after the termination was complete, and (2) Blanck was in fact provided with an opportunity to defend himself in a neutral hearing, which he waived. Plaintiff does not respond to either of Defendants' arguments.

There is no evidence in the record that Defendants publicly disclosed Plaintiff's personnel file. Washoe discussed and approved Hager's recommendation to terminate Plaintiff's employment in a closed executive session. Plaintiff has provided no evidence indicating that Plaintiff's files were publicly disclosed, or that state law mandated public disclosure, therefore there is no evidence of publication. Finally, viewing the evidence in favor of Plaintiff, Defendants provided Plaintiff with a meaningful opportunity for hearing, which he did not pursue.

For these reasons, this Court grants Defendants' motion for summary judgment with regard to Plaintiff's claim for denial of procedural and substantive due process (Count 4).

### E. Tortious Interference with Contract (Count 5)

 "In Nevada, in an action for intentional interference with contractual relations, a plaintiff must establish: (1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." *J.J. Indus., L.L.C. v. Bennett*, 119 Nev. 269, 71 P.3d 1264, 1266 (2003) (citing *Sutherland v. Gross*, 105 Nev. 192, 772 P.2d 1287, 1290 (1989)). "[M]ere knowledge of the contract is insufficient to establish that the defendant intended or designed to disrupt the plaintiff's contractual relationship; instead, the plaintiff must demonstrate that the defendant intended to induce the other party

to breach the contract with the plaintiff." *Id.* at 1268.

 In Nevada, a party cannot, as a matter of law, tortiously interfere with its own contract. *See Bartsas Realty, Inc. v. Nash*, 81 Nev. 325, 402 P.2d 650, 651 (1965). Nevada courts have yet to address whether an agent of the principal, acting within the scope of his employment, is considered a third party as a matter of law. However, this Court has previously held that agents acting within the scope of their employment, i.e. the principal's interest, do not constitute intervening third parties, and therefore cannot tortiously interfere with a contract to which the principal is a party. *See Alam v. Reno Hilton Corp.*, 819 F.Supp. 905, 911–12 (D.Nev. 1993) (citing *Haigh v. Matsushita Elec. Corp. of Am.*, 676 F.Supp. 1332, 1349 (E.D.Va.1987)).

Plaintiff argues that his contract was with the Washoe County School District and not with Hager, thus the Board of Trustees was his client, and not the superintendent, Hager. (Am. Compl. at 6.) Plaintiff further argues that by improper means Hager intentionally interfered with the attorney-client relationship by making defamatory statements to the Board of Trustees concerning Plaintiff, violating District rules and regulations, and disregarding contractual provisions, constituting tortious interference with his contract with the school district. (*Id.* at 6–7.)

Defendants respond that as a matter of law a party cannot tortiously interfere with its own contract, therefore Defendant Washoe cannot be liable for Plaintiff's claim. (Def.'s Mot. to Dismiss at 22.) Additionally, Defendants argue that the agent of a party to a contract cannot tortiously interfere with the contract to which his principal is a party so long as the agent acts within the scope of his authority. Hager, as superintendent of the Washoe

County School District, is the District's agent and therefore cannot, as a matter of law, tortiously interfere with the District's contract. In support of their argument, Defendants cite Plaintiff's Complaint, in which Plaintiff states that, "Defendant Hager is sued in his individual capacity. At all times herein he acted under the color of state law and within the course of scope of his employment as Superintendent of Defendant Washoe County School District." (Am. Compl. at 1.)

Plaintiff responds to Defendants' motion to dismiss and/or summary judgment by arguing that he has implicitly denied the intra corporate conspiracy doctrine, therefore summary judgment should be denied. Plaintiff does not offer any evidence, nor does he provide additional argument, as to why this Court should deny Defendants' motion, except to request leave to amend to cure any deficiency.

As a matter of law the Washoe County School District could not have tortiously interfered with its own contract, therefore the Court will grant Defendant Washoe's motion to dismiss for failure to state a claim with regard Defendant Washoe.

With regard to Defendant Hager, Plaintiff concedes in the initial complaint that Hager was acting at all times within the scope of his employment for Washoe County School District. (*See* Am. Compl. at 1.) As superintendent, Hager was acting as Washoe's agent, thus as a matter of law he could not have tortiously interfered with Plaintiff's employment contract. Hager is not an intervening third party, rather as an agent of the school district, Hager acts as party to the contract. Therefore, any alleged misconduct could amount only to a breach of contract, not tortious interference. Plaintiff can prove no set of facts which would establish a basis for judgment regarding Plaintiff's claim for tortious interference with contract, therefore the Court will grant Defendants' motion to

dismiss Count 5 with regard to Defendant Hager.

### F. Tortious Discharge (Count 6); Retaliation for Whistleblower Activity (Count 9)

In Nevada, the tort of retaliatory discharge requires a finding that firing an at-will employee for reporting illegal conduct of his employer violates established Nevada public policy. *See Wiltsie v. Baby Grand Corp.*, 105 Nev. 291, 774 P.2d 432, 433 (1989) (citing *Hansen v. Harrah's*, 100 Nev. 60, 675 P.2d 394, 395 (1984)). To establish a claim for tortious or retaliatory discharge, Plaintiff must demonstrate that retaliation for the protected speech was the cause of his termination. *Allum v. Valley Bank of Nev.*, 114 Nev. 1313, 970 P.2d 1062, 1066 (1998). "[R]ecovery for retaliatory discharge under state law may not be had upon a 'mixed motives' theory; thus, a plaintiff must demonstrate that his protected conduct was the proximate cause of his discharge." *Id.*

Plaintiff argues that as a result of his protected speech, Defendants terminated his employment. Plaintiff does not identify what speech was protected, and for what speech or conduct Defendants allegedly improperly terminated him. Defendants respond that Plaintiff's claim for tortious discharge should be dismissed for three reasons. First, Defendants argue that Plaintiff had adequate procedures available to him to demonstrate that Hager was pursuing Plaintiff's termination for alleged whistleblower activity before a neutral hearing officer, but chose to waive this option. Second, Defendants allege that Plaintiff's claim should be dismissed because his actions were not taken in good faith. Third, Defendants argue that Plaintiff's complaint to the Sheriff's Department, and subsequent request for a grand

jury, was not the proximate cause of Hager's recommendation for termination. Defendants further argue that Hager would have made his recommendation regardless of Blanck's complaint to the Sheriff.

Plaintiff responds by citing N.R.S. 357.250 [4] for providing a statutory basis for Plaintiff's claim. Additionally, Plaintiff argues that good faith is not an element of tortious discharge. Finally, Plaintiff argues that the question of whether Plaintiff's alleged protected activity was the proximate cause of the termination is a disputed question of fact, therefore summary judgment is inappropriate.

■■■ Viewing all evidence in favor of Plaintiff, the non-moving party, this Court will grant Defendants' motion for summary judgment with regard to Plaintiff's claim for tortious discharge. First, Plaintiff does not identify what protected speech or action provoked Defendants' alleged retaliatory termination. However, assuming that Plaintiff refers to the filing of the criminal complaint against Hager, and subsequent request for grand jury, both were filed after Hager initially notified Plaintiff of his dissatisfaction with Plaintiff's work performance. On November 3, 2003, Hager notified Plaintiff of his dissatisfaction. On or about November 21, 2003, filed his complaint with the Washoe Sheriff's Department. Hager issued his notice of suspension and recommendation for termination to Washoe, which echoed his position in the November 3 letter, on January 16, 2004. In the notice of suspension, Hager cited as reasons for his recommendation similar, if not the same, reasons as outlined in the November 3 letter.

Second, even assuming Plaintiff's actions were a motivating cause of his termination, it is evident that his actions were but one of many reasons for his termination as General Counsel. Defendants cite multiple examples of Plaintiff's insubordination, unprofessional conduct, and dishonesty as the cause of the termination. In Nevada, a Plaintiff seeking relief under a theory of tortious or retaliatory discharge must demonstrate that his protected conduct was the proximate cause of his termination. *See Allum,* 970 P.2d at 1066. Plaintiff fails to provide any evidence that his protected conduct was the proximate cause of his termination, and not one of many causes.

Finally, it is against the law for employers to retaliate against or forbid employees from whistleblower activity. N.R.S. 357.240 provides:

1. An employer shall not adopt or enforce any rule or policy forbidding an employee to disclose information to the state, a political subdivision or a law enforcement agency or to act in furtherance of an action pursuant to this chapter, including investigation for, bringing or testifying in such an action.

2. An employer shall not discharge, demote, suspend, threaten, harass, deny promotion to or otherwise discriminate against an employee in the terms or conditions of his employment because of lawful acts done by him on his own behalf or on behalf of others in disclosing information to the state, a political subdivision or a law enforcement agency in furtherance of an action pursuant to this chapter, including investigation for, bringing or testifying in such an action.

Plaintiff claims that pursuant to N.R.S. §§ 357.240 and 357.250, he is entitled to relief from retaliation for protected activity. (Am. Compl. at 7–8.) Specifically, Plaintiff argues that Defendants have

---

4. N.R.S. 357.250 provides for the statutory remedy for retaliation against whistleblower activity.

threatened to discharge or suspend him with the intention of coercing him to withhold information from law enforcement authorities or to punish him for disclosing such information. (*Id.*) Plaintiff does not specifically identify what protected action triggered Defendants' alleged retaliation.

Defendants argue that although Plaintiff has named separate claims for tortious discharge (Count 6) and retaliation for whistle blower activity (Count 9), these constitute one in the same claim. According to Defendants, the Nevada Supreme Court, in *Allum*, discussed a whistle-blower claim for retaliatory discharge as a tortious discharge claim, using the nomenclature interchangeably. As such, Defendants argue that Plaintiff's claim for retaliatory discharge should be dismissed for the same three reasons as the tortious discharge claim: plaintiff's alleged waiver of the administrative hearing, plaintiff's actions were allegedly taken in bad faith, and the lack of evidence that Plaintiff's actions were the proximate cause of his termination. Plaintiff responds that Defendants fail to address N.R.S. 357.250, therefore the court should deny Defendants' motion for summary judgment.

 N.R.S. 357.240 was passed in 1999. Prior to the passage of N.R.S. 357.240, the Nevada Supreme Court's approach to claims of retaliation for whistle blower activity was articulated in *Allum*. Cases issued subsequent to the passage of N.R.S. 357.240 have not deviated from the approach articulated by *Allum*. *See Clark v. Columbia/HCA Info. Services, Inc.*, 117 Nev. 468, 25 P.3d 215 (2001). Therefore, the Court concludes Nevada would apply the restrictions placed on the tort of retaliatory discharge to claims made under N.R.S. 357.240.

Viewing all evidence in favor of Plaintiff, the non-moving party, a reasonable jury could not find Defendants liable for Plaintiff's claim of retaliation for whistle blowing activity. As a matter of law, in Nevada Plaintiff's protected action must be the proximate cause of his termination, not one of many causes, or part of a mixed motive. *See Allum*, 970 P.2d at 1066. As discussed previously, the evidence indicates that if Plaintiff's action was a cause of his termination at all, it was but one of many causes, therefore he cannot recover for the tort of retaliation for whistle blowing activity. *See id.* Consequently, the Court will grant Defendant's motion for summary judgment with regard to Plaintiff's claim for retaliation for whistle blowing activity (Count 9).

### G. Negligent Supervision and Retention (Count 7)

 In Nevada, an employer "has a duty to use reasonable care in the training, supervision, and retention of his or her employees to make sure the employees are fit for their positions." *Hall v. SSF, Inc.*, 112 Nev. 1384, 930 P.2d 94, 99 (1996). However, a Plaintiff may be barred from recovery when seeking damages for pure economic loss based on negligence. *Calloway v. City of Reno*, 116 Nev. 250, 993 P.2d 1259 (2000). "Under the economic loss doctrine, economic losses are not recoverable in negligence absent personal injury or damage to property other than the defective entity itself." *Id.* (citing *Central Bit Supply v. Waldrop Drilling*, 102 Nev. 139, 717 P.2d 35, 36–37 (1986)). "The primary purpose of the rule is to shield a defendant from unlimited liability for all of the economic consequences of a negligent act, particularly in a commercial or professional setting, and thus to keep the risk of liability reasonably calculable." *Local Joint Executive Bd. of Las Vegas, Culinary Workers Union, Local No. 226 v. Stern*, 98 Nev. 409, 651 P.2d 637, 638 (1982).

The Nevada Supreme Court has not specifically addressed whether the economic loss doctrine applies to the tort of negligent supervision and retention, however in *Stern*, the Nevada Supreme Court applied the economic loss doctrine to bar recovery for lost wages resulting from unemployment caused by the MGM fire. *Id.* The court held that "[a]s appellants did not allege that respondents engaged in intentionally tortious conduct or caused them personal injury or property damage," the case properly was dismissed based on the economic loss doctrine. *Id.*

Plaintiff claims that "Defendant Washoe County School District failed to exercise reasonable care in its supervision and retention of Defendant Hager so as to avoid improper management and personnel practices ..." (Am. Compl. at 8.) Plaintiff argues that the economic loss doctrine does not apply because the Nevada Supreme Court has not extended the doctrine beyond a property loss situation, and furthermore does not apply to a situation where the Nevada Supreme Court specifically recognizes the tort. Additionally, Plaintiff argues that even if the economic loss doctrine were to apply, it would constitute a partial attack on the claim, as Plaintiff seeks non-economic damages in the claim. Plaintiff cites to paragraph 45 of the Amended Complaint, which states, "[a]s a direct and proximate result of the negligence of the District, Plaintiff has suffered harm and is entitled to compensatory damages and all foreseeable consequential and incidental damages." (Am. Compl. at 8.) Elsewhere in the Complaint, with regard to other specific claims Plaintiff allege non-economic damages. For example, under Plaintiff's claim for tortious interference with contract (Count 5), Plaintiff claims:

As a result of Defendants' actions, these contractual relationships were harmed, entitling Plaintiff to damages for tortious interference with contractual relations and prospective contractual relations. Such damages include past and future general damages for emotional distress, anguish, frustration, humiliation, grief, harm to reputation, harm to career as well as past and future special damages, including loss of income, benefits, seniority, pension, all in sums to be proved at trial.

(*Id.* at 7, ¶ 7.) Under Plaintiff's claim for First Amendment retaliation, Plaintiff claims:

As a result [of Defendants' alleged conduct], Defendants are liable under 42 U.S.C. § 1983 for damages, including past and future general damages for emotional distress, anguish, frustration, humiliation, grief, harm to reputation, harm to career as well as past and future special damages, including loss of income, benefits, seniority, pension, all in sums to be proved at trial equitable relief, attorney's fees and costs.

(*Id.* at 3–4, ¶ 12.) Plaintiff argues that these two claims for damages have been incorporated into Plaintiff's claim for negligent supervision and retention, thus the economic loss rule is only a partial defense, and therefore Defendants' motion should be denied.[5]

Defendants argue that Plaintiff's claim for negligent supervision and retention fails as a matter of law. Defendants argue that the economic loss rule bars Plaintiff from recovery, as Defendants assert Plaintiff claims only pure economic losses. With regard to Plaintiff's assertion of non-economic claims, Defendants argue that as

---

5. With regard to Plaintiff's claim for negligence supervision and retention, Plaintiff states that "Plaintiff refers to and by such reference incorporates herein each, every and

all averments contained in paragraphs 1–42 herein above as thought fully set forth at this point." (Am. Compl. at 8.)

a matter of law, Plaintiff's claims for non-economic loss cannot be incorporated into the claim for negligent supervision and retention. Defendants contend that in Nevada, a Plaintiff cannot recover damages for mental anguish or emotional distress as a result of ordinary negligence, but rather must assert extreme or outrageous conduct to make a claim for such damages, which Defendants allege Plaintiff does not.

■ In the first Amended Complaint, Plaintiff sets forth each claim and lists claim by claim, the particular damages he seeks as a result of each claim. For Plaintiff's Count 7, Negligent Supervision and Retention, Plaintiff states that he is entitled to compensatory damages and all foreseeable consequential and incidental damages. It is clear from the face of the Complaint, that Plaintiff intended to plead particular damages for each particular claim, not to incorporate broadly all damages into each claim including Plaintiff's claim for negligent supervision and retention. As Plaintiff has not alleged personal injury, property damage, or intentional tortious behavior, the Court will grant Defendants' motion to dismiss on Count 7 based on the economic loss doctrine. *See Stern*, 651 P.2d at 638.

## H. Defamation (Count 8)

■ "Defamation is a publication of a false statement of fact." *Pegasus v. Reno Newspapers, Inc.*, 118 Nev. 706, 57 P.3d 82, 87 (2002). Generally, the elements of a defamation claim include: (1) a false and defamatory statement, (2) an unprivileged publication to a third person of the statement, (3) fault, amounting to negligence, and (4) actual or presumed damages. *See id.* at 90. In Nevada, statements of opinion cannot be defamation as a matter of law, because there is no such thing as a false idea. *See id.* "To prevail on a defamation claim, a party must show publication of a false statement of fact."

*Posadas v. City of Reno*, 109 Nev. 448, 851 P.2d 438, 443 (1993).

It is generally accepted that for both libel and slander it is a question of law and, therefore, within the province of the court, to determine if a statement is capable of a defamatory construction. If susceptible of different constructions, one of which is defamatory, resolution of the ambiguity is a question of fact for the jury.

*Branda v. Sanford*, 97 Nev. 643, 637 P.2d 1223, 1225–26 (1981).

Plaintiff alleges that Hager made false and defamatory statements about him, including that Plaintiff is insubordinate and dishonest, therefore Defendants committed tortious defamation. (Am. Compl. at 8.) Plaintiff alleges that Hager made these statements with actual malice. (*Id.*) Furthermore, Plaintiff argues that at no time were the statements made under privilege. As a result of the defamation, Plaintiff alleges he suffered and is entitled to damages for harm to his reputation, emotional distress, anguish, embarrassment, humiliation, in addition to other damages claimed. (*Id.* at 9.)

Defendants argue that Plaintiff's defamation claim should be dismissed for failure to state a claim, because Plaintiff did not allege any defamatory statements, whether there was an unprivileged publication of the purported defamatory statements, and whether there was actual publication of the statements. Plaintiff responds he is entitled to amend the pleadings to specify the statements, but that the amended complaint satisfies the requirements for notice pleading purposes. (Pl.'s Opp. to Mot. to Dismiss or in the Alternative for Summ. J. at 9.)

A plaintiff's complaint must provide a short, plain statement placing defendant on notice of plaintiff's claim and the ground upon which it rests. *See Yamagu-*

*chi*, 109 F.3d at 1481. As this Court previously has stated, a plaintiff merely must plead sufficiently to "establish a basis for judgment against the defendant." *Id.* While there is a strong presumption against dismissing an action for failure to state a claim, the Court does not merely assume the truth of legal conclusions because they are cast as factual allegations. *See Clegg v. Cult Awareness Network*, 18 F.3d at 754–55.

■ Plaintiff alleges that Defendants made false and defamatory statements about Plaintiff. Plaintiff does not identify when and to whom the statements were made, and therefore does not sufficiently plead the claim of defamation. However, Plaintiff requests this Court to allow Plaintiff to amend the complaint. The Court will deny Defendants' motion to dismiss Plaintiff's defamation claim (Count 8), and will grant Plaintiff thirty (30) days from the date of entry of this Order to amend his Complaint to allege the specific statements constituting defamation, as well as the elements of publication and fault. If Plaintiff does not amend his Complaint within this time period, the Court will dismiss Plaintiff's defamation claim.

### I. Rule 56(f)

Plaintiff appears to make a motion to continue Defendant's motion pending further discovery pursuant to Federal Rule of Civil Procedure 56(f). In support of his motion, Plaintiff offers the affidavit of Jeffrey A. Dickerson ("Dickerson"), plaintiff's attorney, which states that he believes discovery is needed. (Pl.'s Opp. to Mot. to Dismiss, Ex. 1.)

■ Where parties are unable to present by affidavit facts essential to the opposition of a motion for summary judgment, Federal Rule of Civil Procedure 56(f) provides:

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed.R.Civ.P. 56(f). In the interest of justice, the Court may grant additional time for discovery where the opposing party to a motion for summary judgment has presented by affidavit, compliant with Rule 56(f), that they cannot obtain facts essential to the opposition of the motion. *Id.* However, a party seeking further discovery under 56(f), bears the burden to make clear "what information is sought and how it would preclude summary judgment." *Nicholas v. Wallenstein*, 266 F.3d 1083, 1088–89 (9th Cir.2001) (citing *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir.1998)). As the United States Court of Appeals for the Second Circuit has noted, "[I]t is clear that a plaintiff cannot defeat a motion for summary judgment by merely restating the conclusory allegations contained in his complaint, and amplifying them only with speculation about what discovery might uncover." *Contemporary Mission v. U.S. Postal Serv.*, 648 F.2d 97, 107 (2nd Cir. 1981). "An opposing party's mere hope that further evidence may develop prior to trial is an insufficient basis upon which to justify denial of the motion." *Neely v. St. Paul Fire and Marine Ins. Co.*, 584 F.2d 341, 344 (9th Cir.1978).

The Dickerson affidavit does not delineate what facts essential to Plaintiff's opposition he expects to obtain through further discovery, what further discovery is necessary, or reasons why he has not been able to previously obtain such discovery. There is no statement as to what discovery is sought and how it might preclude summary judgment. The Dickerson affidavit states only conclusory allegations and therefore is insufficient under Rule 56(f).

Accordingly, the Court will deny the motion to continue under Rule 56(f).

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Defendants Motion to Dismiss or in the alternative for Summary Judgment is GRANTED. With regard to Plaintiff's claims for First Amendment Retaliation (Count 1), Breach of Contract (Count 2), Breach of the Covenant of Good Faith and Fair Dealing (Count 3), Denial of Procedural and Substantive Due Process (Count 4), Tortious Interference with Contract (Count 5), Tortious Discharge (Count 6), Negligent Supervision and Retention (Count 7), and Retaliation for Whistleblower Activity (Count 9) Defendant's motion is hereby granted.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss Plaintiff's claim of defamation (Count 8) is denied to the extent that Plaintiff shall have thirty (30) days to amend his Complaint to allege the elements of a prima facie case of defamation. If Plaintiff fails to amend the Complaint within thirty days, the Court will dismiss with prejudice Plaintiff's defamation claim.